[Civ. No. 23953.   Second Dist., Div. Two.   Jan. 4, 1960.]

CENTRAL MANUFACTURING DISTRICT, INC. (a Corporation) et al., Respondents, v. BOARD OF SUPERVISORS OF LOS ANGELES COUNTY, Appellant.

851

Harold W. Kennedy, County Counsel, and David D. Mix, Deputy County Counsel, for Appellant.

Alexander Googooian as Amicus Curiae on behalf of Appellant.

O'Melveny & Myers, Sidney H. Wall, William D. Moore, Robert W. Walker, John J. Balluff and Louis C. Viereck for Respondents.

ASHBURN, J. — Appeal from judgment in mandamus which annuls a proceeding for incorporation of an area to be known as city of Mirada Hills because it was initiated six months after the voters rejected incorporation of city of La Mirada Knolls, held to be in violation of section 34325.1 of the Government Code: "If a majority of the votes cast is against incorporation, no further proceedings for the incorporation of *the same or substantially the same area* shall be initiated for two years after the date of the election." (Emphasis added.) The trial court held that the proposed Mirada Hills included substantially the same area as the rejected La Mirada Knolls. The Board of Supervisors of the County of Los Angeles appeals from the judgment.

Respondents' brief says: "Immediately following this unsuccessful incorporation election, the proposed city was redesigned. A small area along the eastern boundary and a small area along the western boundary were deleted. A small area adjoining the southwestern boundary was added. (This parcel is owned by the individual respondents, the Harveys.) A larger area of predominantly agricultural land adjoining the northeastern boundary was also added. The remainder of the proposed La Mirada Knolls, being the central and major part of that proposed city, remained undisturbed. When these deletions and additions had been made, the name was changed from 'La Mirada Knolls' to 'Mirada Hills.' " This is substantially accurate, as is shown by map received in evidence as Exhibit 2. However, the "small" areas mentioned by counsel prove to be quite substantial in the aggregate. It was stipulated that the area of La Mirada Knolls was 4.4 square miles;

that of Mirada Hills 4.8 square miles, which included 60 per-cent of the area of La Mirada Knolls; omitted from the new proposal were 1.7 square miles which had been in the first one; 2.1 square miles of Mirada Hills were never within La Mirada Knolls; the result is an area of 2.7 square miles common to both cities and an area of 3.8 square miles which is not common.

In determining whether the proposed new city would be the incorporation of "the same or substantially the same area" as the rejected La Mirada Knolls, the trial judge confined the inquiry to "an acre by acre comparison of the two areas" as counsel phrase it, and excluded evidence of other factors such as those suggested in respondents' brief, viz.: "Respondents believe that the determination might well include a considera-tion of all those essential factors which are normally connected with the formation of new cities. A comparison of such factors as assessed valuation, population and registered voters would certainly shed some light on the problem. Was the same com-munity the subject of both proceedings? Were the propo-nents the same? Has there been any substantial change in the residential areas? Is the central business district the same in both proceedings? In view of the many important factors involved in the formation of cities, a comparison of these other factors, in addition to the number of acres, would appear to be of great benefit in determining whether the two proposals involve the same thing."

The statutory history shows the trial court's pro-cedure to have been correct. Section 34325.1, as originally enacted in 1955, contained the same language as the present section, except that it provided a waiting period of one year instead of two. It was amended in 1957 (ch. 922, p. 2131; approved by Governor on June 8, 1957) to read: "If a major-ity of the votes cast is against incorporation, no further pro-ceedings for the incorporation of the same or substantially the same area shall be initiated for one year after the date of the election. *In determining whether the same or substantially the same area is involved the board of supervisors shall con-sider and compare the total acreage, assessed value, registered voters, and estimated number of inhabitants, of each area and the factors common to both such areas.*" (Emphasis added.) As a substantial amendment to a statute implies legislative intent to make a change in the law (*Estate of Todd,* 17 Cal.2d 270, 274 [109 P.2d 913]; *Olivas* v. *Weiner,* 127 Cal.App.2d

597, 599 [274 P.2d 476]), the quoted amendment broadened the inquiry beyond mere comparison of acreages. That was in June, 1957, but the Legislature changed its mind in July of the same year, took this new language out of the statute and restored it to its original form except that the waiting period was changed from one year to two years (Stats. 1957, ch. 2363, p. 4096, approved by Governor on July 10, 1957). Of course the last amendment thus became the only change in the original section (45 Cal.Jur.2d, § 63, p. 585). We think this history shows, and we hold, that the mere comparison of acreages is the proper approach to the application of the statutory phrase "substantially the same area."

There is no conflict in the evidence upon this phase of the case and the question of whether "substantially the same area" was included in the Mirada Hills proceeding becomes one of law to be determined independently by the appellate court, which will respect but not be bound by the ruling below.

Thus we are brought to the necessity of reading the maps (of which Exhibit 2 is a reliable exemplar) and considering the stipulated acreage stated in terms of square miles as above set forth, and deciding whether the trial judge was mistaken in his appraisal of the same.

Persuasive precedents are practically nonexistent. ■■■ The phrase "substantially the same" has no precise connotation and there is no formula or measuring rod by which to test it.

In *Atchison etc. Ry. Co.* v. *Kings County Water Dist.,* 47 Cal.2d 140 [302 P.2d 1], the court dealt with the question of exclusion from a water district of the Santa Fe right-of-way which ran through the district. The alleged right to exclusion depended upon a showing "that the land will not be substantially and directly benefited by its continued inclusion in the district" (p. 143). The court, after quoting the generalities of dictionary and like definitions of the words "substantially" and "substantial" said, at page 144: "'Substantial' is a relative term, its measure to be gauged by all the circumstances surrounding the matter in reference to which the expression has been used." The phrase "substantially the same" is an elusive one which presents a case to case problem.

In *Adams* v. *Edwards,* 1 Fed.Cas. 112, 114 (case No. 53), a patent case, the judge instructing the jury said: "And I do not say, as one of my brethren upon the bench has said, that there is no definite signification to the word 'substantial.' When we say a thing is substantially the same, we mean it is

the same in all important particulars. It must be of the same material, when the material is important; it must be of the same thickness, when thickness is important; it must be applied in the same way, condition, and extent, to the doors as well as the sides, when either of these circumstances makes an essential difference.''

*Rachford* v. *City of Port Neches* (Tex.Civ.App.), 46 S.W.2d 1057, 1059, was an action for foreclosure of a tax lien and the defendant resisted upon the ground that the city was not legally incorporated. Without deciding the question of collateral attack, the court ruled as follows upon the matter in which we are interested: ''On September 11, 1926, an election was held to incorporate the 'City of Port Neches.' The incorporation was defeated in this election. This proposed incorporation included the town of Port Neches and also the town of Nederland, two miles from Port Neches, with all the territory between these two towns. The 'City of Port Neches,' appellee herein, was incorporated as the result of an election held on July 26, 1927. It includes no part of the town of Nederland and only about one-half the territory included in the 1926 election. Appellant insists that the 1927 election was in violation of article 1134, R.S. 1925, regulating the holding of elections for incorporation, which expressly provides that 'a new election shall not be ordered in less than one year.' The material change in the proposed boundaries of the city of Port Neches authorized the 1927 election, though it was in fact held in less than one year from the 1926 election.''

*State* ex rel. *Hunt* v. *Montgomery County Board of Elections* (Ohio App.), 135 N.E.2d 882, upon which respondents rely, dealt with a petition for writ commanding board to order an election upon a petition for detachment of relator's property from the Village of Kettering. Page 883: ''The territory described in the petition incorporates 1,882 acres of land, 1,368 of which were included in a proposal to detach 3,090 acres from the Village of Kettering voted upon at an election held April 21, 1953. At this election the proposal to detach territory was defeated. The Board bases its refusal to call an election, as requested, solely on that part of R.C. section 709.39 which provides: 'If a majority of the ballots cast at such election are cast against detachment, no further proceedings shall be had in relation thereto for a period of two years.' We are of opinion that the Board correctly interpreted the quoted part of R.C. section 709.39, and properly refused to order the

election sought by the petitioners." The ruling: "It is urged by relator that the territory included in the present petition is not the same, or substantially the same, as incorporated in the election proposal of 1953, and, therefore, the election now requested should proceed. Of course it is not the same territory as it includes about 500 acres outside of that presented to the voters in the 1953 election for detachment of territory. However, 1,368 acres of the territory included in the description in the present petition is the same as voted upon in 1953. This acreage represents over 44%, or a substantial part, of the 3,090 acres voted upon in 1953; a substantial part being affected, the statutory bar operates." (P. 883.) It is to be noted that the statute there under consideration does not use the phrase "same or substantially the same," but says, "in relation thereto." The holding that a "substantial part" was affected by the inclusion in the second detachment proceeding of one-half of a previously defeated detachment was predicated upon a statute which did not contain the phrase "same or substantially the same" and that was the language of counsel.

The cited case of *Johnson* v. *City of San Pablo,* 132 Cal. App.2d 447 [283 P.2d 57], throws no light upon our present problem.

█ We have concluded that the identity of 2.7 square miles of area in the two proposed cities, with a total area of 3.8 square miles not in common, does not warrant a holding that the incorporation of Mirada Hills would constitute the incorporation of the same or substantially the same area as La Mirada Knolls, and that the trial court erred in ruling that it offends the statute.

Respondents assert error in the trial court's rejection of their claim that the Mirada Hills incorporation proceeding was precluded by the pendency of an annexation proceeding instituted by the city of Santa Fe Springs and including a portion of the Mirada Hills territory. Reliance is placed upon section 35308, Government Code, which reads: "When a valid and sufficient petition for the annexation of any territory to a city has been received by its legislative body or its legislative body has initiated proceedings as hereinafter provided and until an ordinance disapproving such annexation becomes effective (a) no notice of intention to incorporate a new city shall be filed which includes any of the territory described in the annexation proceedings; (b) no notice of intention to

circulate a petition for the annexation of any such territory under the Annexation Act of 1913 shall be filed or consented to by the legislative body of any city; (c) no petition shall be filed with, and no proceedings shall be instituted by, the legislative body of any city for the annexation of any such territory under this division.''

Appellant objects to consideration of this argument upon the ground that a respondent may not be heard to urge error against him. That is the general rule but not a universal one. Section 956, Code of Civil Procedure, as amended in 1957, reads: ''Upon an appeal from a judgment the court may review the verdict or decision, and any intermediate ruling, proceeding, order or decision which involves the merits or necessarily affects the judgment, or which substantially affects the rights of a party. The court may also on such appeal review any order on motion for a new trial. *The respondent, or party in whose favor the judgment was given, may, without appealing from such judgment, request the court to and it may review any of the foregoing matters for the purpose of determining whether or not the appellant was prejudiced by the error or errors upon which he relies for reversal or modification of the judgment from which the appeal is taken.* The provisions of this section do not authorize the court to review any decision or order from which an appeal might have been taken.'' (Italicized matter inserted in 1957.) ▮▮▮ This new matter seems to be a codification of the existing rule established by court decisions; they recognize that a respondent may assert a legal theory which, if found to be sound, should result in affirmance notwithstanding appellant's contentions. (*Mott* v. *Horstmann,* 36 Cal.2d 388, 393 | 224 P.2d 11] ; *Sears* v. *Rule,* 27 Cal.2d 131, 140 [163 P.2d 443] ; *City of Glendale* v. *Crescenta etc. Water Co.,* 135 Cal.App.2d 784, 798 [288 P.2d 105].) ▮▮▮ Necessarily, respondent is bound by findings of fact based upon substantially conflicting evidence. (*Metzenbaum* v. *Metzenbaum,* 115 Cal.App.2d 395, 404 [252 P.2d 31, 966].)

Respondents here contend that the Santa Fe Springs annexation was still pending and preclusive of the Mirada Hills annexation because it had not been terminated by ordinance in accordance with said section 35308, Government Code (quoted *supra*), the city having attempted to accomplish that result by mere resolution. The setting in which this question arises should be understood.

The Santa Fe Springs annexation proceeding was brought

under the Annexation of Uninhabited Territory Act of 1939 (Gov. Code, §§ 35300-35326). Section 35303 prescribes that: ''For purposes of this article territory shall be deemed uninhabited if less than twelve registered voters reside within it at the time of the filing of the petition for annexation or the institution of proceedings on motion of the city legislative body.'' The initiatory Resolution Number 124, passed on January 21, 1958, contains a finding that the territory proposed to be annexed ''has less than twelve registered voters residing therein.'' It also set March 13, 1958, at 7:30 p. m. as the time for hearing of objections. On February 13, 1958, before the time for hearing had arrived, the city council adopted Resolution Number 144 which, after certain recitals, says: ''Now, THEREFORE, THE CITY COUNCIL OF THE CITY OF SANTA FE SPRINGS DOES RESOLVE, DETERMINE AND ORDER AS FOLLOWS: *Section* 1: All annexation proceedings of the City of Santa Fe Springs regarding Annexation No. 23 are hereby terminated pursuant to the authority contained in Section 35007[1] of the Government Code.''

Respondents' amended petition for mandamus alleges in paragraph 9 that ''on the day said Resolution No. 124 was adopted there were less than twelve registered voters residing within the boundaries of the territory described in said resolution.'' Also: ''14. Prior to the hour set for hearing objections to said Southside No. 23 annexation, protests against said annexation were filed with the City Council of the City of Santa Fe Springs. . . . 15. From and after January 21, 1958, to and including the date of filing this amended petition, said City Council of said City of Santa Fe Springs did not adopt and has not adopted an ordinance disapproving said Southside No. 23, and no ordinance disapproving said annexation

[1]Gov. Code, § 35007: ''The legislative body shall have power to terminate annexation proceedings at any time prior to the date set for the hearing of protests. However, if protests against the annexation or the election are filed with the legislative body prior to the hour set for hearing objections thereto, the city legislative body shall proceed to hear and pass upon all protests so made in the manner provided for in Section 35121 or 35313, whichever is applicable to the proceedings, even though the proceedings have been terminated. If the city legislative body finds that a majority protest as therein provided is made, no further proceedings for the annexation of any of the territory shall be taken for one year after the finding. If the city legislative body finds that a majority protest as therein provided for is not made or it finds that no protests have been filed, new proceedings for the annexation of all or part of the same territory to the city may be instituted and proceeded with as provided in this chapter at any time after the date of such finding.''

has ever become effective; and said annexation has not been terminated.'' At the trial these issues were opened by respondents who called witnesses and offered other evidence in support of the allegations. Appellant joined in trying these issues and made no objection to canvassing the same. The court found that the averments of said paragraph 9 (*re* number of registered voters in area) were untrue, thus removing that area from the possibility of annexation as uninhabited territory. This finding was based upon substantially conflicting evidence. The court also found to be true the allegations of paragraph 15 *re* termination of annexation by resolution instead of ordinance, but concluded that ''[t]he annexation of the City of Santa Fe Springs known as 'Southside No. 23' was terminated by Resolution No. 144, and said annexation did not prohibit or interfere with the incorporation proceedings for said proposed City of Mirada Hills.''

Respondents' reliance upon said section 35308 proves to be misplaced. It was enacted in 1955 (ch. 915, § 14, p. 1544) effective June 6, 1955, and operative on July 1, 1955. But section 35007 was enacted later in the same session by chapter 1757, section 3, page 3247, approved by Governor on July 6, 1955. Section 8 of this latter amending act says: ''The right of a city to terminate annexation proceedings prior to the date set for the hearing of protests without prejudice to a new proceeding filed within a year is the existing law. However, the provisions regarding filing and hearing of protests pursuant to the provisions of Section 35007 shall hereafter apply.'' (P. 3248.) If there be any inconsistency between section 35007 and 35308, the former must prevail for it is later in point of time and is special in nature, thus controlling within its narrow field the general provisions of section 35308 (*cf. City of Port Hueneme* v. *City of Oxnard*, 52 Cal.2d 385, 395-396 [341 P.2d 318]). In other words, section 35007 relates only to termination prior to the date set for hearing of protests, while section 35308 is general in its breadth and operation; the time for an ordinance arrives after the hearing has been had. (See §§ 35314-35315.) Resolution Number 144 of the City of Santa Fe Springs specifically states that the action terminating the annexation is taken pursuant to section 35007.

Although section 35308 requires action to be taken by ordinance and, if applicable in the present situation, a resolution probably would not suffice (McQuillin, Municipal Corporations

(2d ed.), vol. 2, § 664, p. 661; *Reed* v. *Wing,* 168 Cal. 706, 712 [144 P. 964]), section 35007 does not specify the form of action to be taken and hence settled principles dictate the sufficiency of a resolution. The difference between an ordinance and a resolution is well stated in 35 California Jurisprudence 2d, section 392, page 200: "The enactments of a city's legislative branch are known as ordinances and resolutions. Strictly speaking, there is a difference between the two. An ordinance in its primary and usual sense means a local law. It prescribes a rule of conduct prospective in operation, applicable generally to persons and things subject to the jurisdiction of the city. 'Resolution' denotes something less formal. It is the mere expression of the opinion of the legislative body concerning some administrative matter for the disposition of which it provides. Ordinarily it is of a temporary character, while an ordinance prescribes a permanent rule of conduct or of government. However, for many purposes the two words are equivalent terms." See also 37 American Jurisprudence, section 142, page 755.

█ *Crowe* v. *Boyle,* 184 Cal. 117, 149 [193 P. 111] : "But in the absence of statutory or charter provision to the contrary, a legislative act may be either in the form of a resolution or of an ordinance. [Citations.] █ For many purposes resolutions and ordinances are equivalent terms. [Citations.] █ 'And it has been held that even where the statute or municipal charter requires the municipality to act by ordinance, if a resolution is passed in the manner and with the statutory formality required in the enactment of an ordinance. it will be binding and effective as an ordinance. [Citations.] The charter of San Francisco, although providing that all legislative action shall be by ordinance . . . expressly authorizes in section 13 the passage of resolutions providing for the appropriation or disposition of public property or the expenditure of public money. It is thus provided that this particular form of legislative action may be had by either ordinance or resolution. . . .''

█ The trial court correctly concluded that the use of a resolution instead of an ordinance to terminate the annexation under section 35007 was permissible and that the annexation proceeding was not a bar to the Mirada Hills incorporation.

There is another equally sound reason for the same result. Because there were more than 12 registered voters in the area the Santa Fe annexation proceeding was void.

Counsel for respondents argue in effect that they are entitled to challenge the court's finding of 12 or more registered voters in the annexation area because as a matter of law that question is concluded by the finding of the city council in Resolution Number 124 "that said territory has less than twelve registered voters residing therein"; that this is a political question; the finding of the city council is conclusive and it precludes the exercise of jurisdiction over that subject by the courts when the attack is collateral as at bar.

*People* v. *City of Richmond,* 141 Cal.App.2d 107 [296 P.2d 351], refutes this argument decisively. It was a proceeding in quo warranto to test an annexation under the same Uninhabited Territory Act involved in the instant case. The lower court held the proceeding to be void because it found there were more than 11 registered voters in the territory to be annexed. Concerning the claim that the city council had determined the area to be uninhabited, that that was a political question and the council's decision conclusive, the court said: "Richmond claims that in the absence of fraud the findings of the city council (including its finding that the territory was uninhabited) were final; that there was no proof of fraud; hence, it was incompetent for the trial court to make findings contrary to those made by the city council. . . . Section 35303 of the Government Code defines 'uninhabited' but is silent as to who determines the inhabited or uninhabited character of land proposed for annexation. Section 35313 may by inference confer such a power as an incident to the exercise of the power it gives the local legislative body to 'hear and pass upon all protests.' [P. 116.] . . .

"Even if the city had power to decide whether this territory was uninhabited, we must not forget this presents a jurisdictional question, upon which depends the very power of the city to act. A discussion of the judicial nature of an inquiry concerning the existence of facts upon which the jurisdiction, the very capacity of an agency to act depends, will be found in 4 Cal.Jur. 1110-1113, section 71; in 10 Cal.Jur.2d 163-165, section 85; in 5 A.L.R.2d 675; and in cases cited in each.

"Finally, the city (as a special defense pleaded in its answer) presented these very questions for decision by the court de novo, not by way of review of a decision by the city. [P. 117.] . . .

"The city then proceeded to and did try these issues on that theory, clear through to the end of the trial, including the

arguments of counsel after the taking of the evidence. The parties put in their evidence on these issues just as in any other trial before a court of first instance, just as if there had been no determination by the city or by any other tribunal subordinate to the superior court. It would be strange indeed if a party could thus tender material issues to the superior court, present evidence to that court on those issues and suffer, indeed induce, the opposite party to do likewise, and then, confronted with an adverse decision, claim upon appeal that this was all a mistake, that the entire trial in the superior court should have been conducted as if a mere review of an earlier trial and determination by the city council, a mere agent of the very party defendant who thus tendered these issues to and tried them de novo before the superior court. No one questions the competency of the city thus to ignore the decision of its own agent and relitigate these issues before the superior court, a court of unquestionably competent jurisdiction. [P. 118.] . . .

"The doctrine which requires an appellant to stay with the theory upon which he tried the case, clearly applies here. (See 3 Witkin, Cal. Proc. 2264-2267.) Quite recently, we made similar disposition of a like contention by the city of San Pablo, involving annexation proceedings by that city and the city of Richmond (see *Johnson* v. *City of San Pablo, supra,* 132 Cal.App.2d 447, footnote on page 454.)

"It necessarily follows that the defendant city was without jurisdiction to proceed under the Annexation of Uninhabited Territory Act and that the judgment must be affirmed." (Pp. 118-119.)

The note on page 454 of the opinion in *Johnson* v. *City of San Pablo,* 132 Cal.App.2d 447, reads as follows: "Appellants further state that the San Pablo city council, when it gave consent to the commencement of annexation proceedings, impliedly found that all of the territory in question was inhabited and that such a finding was 'final and conclusive in the absence of a showing that there was an abuse of discretion or fraud on the part of the . . . council in making such finding.'

"If appellants are thereby claiming that the character of that territory (inhabited or uninhabited) is not the subject of judicial inquiry in the current actions, they are mistaken. It is an issue under the pleadings. The parties treated it as an issue during the trial. The fact that the 2,800-acre tract of

submerged land is an uninhabited, separable 'and distinguishable portion of the area, appears upon the face of the record. The additional evidence taken by the court (including the testimony of Mr. Finley) went in without objection.

"Under the circumstances, it is clear that the issue under discussion is justiciable and that the trial court was entitled to consider all of the evidence introduced thereon. [Citations.]" To the same effect see *People* v. *Cardiff Irr. Dist.*, 51 Cal.App. 307, 314, 315 [197 P. 384]. The questions here discussed were not involved in *People* v. *City of Whittier*, 133 Cal.App. 316 [24 P.2d 219], and *People* v. *City of Garden Grove*, 165 Cal.App.2d 794 [332 P.2d 841]. Those cases are not opposed to the views expressed in the Richmond case, *supra*.

In Richmond, as in this case, the party who sought to invoke the conclusive determination rule had raised in its pleading the issue of whether the area was uninhabited, had pursued the matter by evidence and otherwise throughout the trial, the opponent had joined in contesting that issue, and that same party upon appeal had tried to shift theories, arguing that there was no jurisdiction to try the question at all. The situation suggests, as does the Richmond opinion, the analogy of the law of res judicata.

*Hill* v. *City Cab etc. Co.*, 79 Cal. 188, 191 [21 P. 728], speaking of the rule that a party cannot collaterally assail a judgment unless it is void on its face, says: "But this rule is not that a judgment which is void will be enforced as if it were valid, but that it cannot be shown to be void except in certain ways. If the party, however, should admit the facts which show the judgment to be void, or if he should allow them to be established without opposition, then, as a question of law upon such facts, we do not see why the case is not like that where a judgment is void upon its face. In the present case, the findings establish the fact that there was no service of summons upon or authorized appearance by the defendant."

*Brockway etc. Co.* v. *County of Placer*, 124 Cal.App.2d 371, 376 [268 P.2d 524]: "In 15 California Jurisprudence, pages 61, 62, it is said: 'The public policy underlying the doctrine of collateral attack is not such as to prevent the interested parties from waiving the protection of the rule limiting collateral inquiries to the face of the record. The rule is not that a judgment which is void will be enforced as if it were valid, but that it cannot be shown to be void except in certain ways.

And if the parties admit or stipulate, or fail to object to the evidence of, the facts showing a lack of jurisdiction, it is then established that the judgment is void as effectively as shown by the record; *and whenever such fact is brought to the attention of the court, it is the duty of the court to so declare as a matter of law.*' (Italics supplied.)

"In *Thompson* v. *Cook*, 20 Cal.2d 564, 569 [127 P.2d 909], the Supreme Court states the rule as follows: '. . . [A]lthough the judgment or order is valid on its face, if the party in favor of whom the judgment or order runs admits facts showing its invalidity, or, without objection on his part, evidence is admitted which clearly shows the existence of such facts, then it is the duty of the court to declare the judgment or order void.' . . .

"There is nothing sacred about the rule limiting collateral attack; it is a rule of convenience designed to bring an end to litigation when parties have had an opportunity to have their day in court." See also 29 California Jurisprudence 2d, section 190, page 147.

Other points raised in the briefs require no separate discussion.

The judgment is reversed with instructions to the trial court to deny the peremptory writ of mandate.

Fox, P. J., and Herndon, J., concurred.

A petition for a rehearing was denied February 2, 1960, and respondents' petition for a hearing by the Supreme Court was denied February 24, 1960. Schauer, J., was of the opinion that the petition should be granted.