[Civ. No. 25346. First Dist., Div. One. Dec. 1, 1969.]

CLYTIE M. ELAM, Plaintiff and Appellant, v.
WENDELL A. ELAM, Defendant and Respondent.

COUNSEL

Suren Toomajian, Stark, Simon & Sparrowe and Alfred N. Gertmenian for Plaintiff and Appellant.

White & Cruikshank and John F. Cruikshank, Jr., for Defendant and Respondent.

## OPINION

**MOLINARI, P. J.**—Plaintiff wife appeals from an interlocutory judgment of divorce and from an order denying a motion for new trial.[1]

Plaintiff and defendant were married on January 31, 1958, separated in August of 1963, and had no children as a result of their marriage. The wife commenced this action on May 29, 1964, seeking a decree of separate

[1] An order denying a motion for new trial is nonappealable. (Code Civ. Proc., § 904.1, formerly § 963.) However, on appeal from a final judgment, the court may review an order denying a motion for new trial. (Code Civ. Proc., § 906, formerly § 956; *Litvinuk* v. *Litvinuk,* 27 Cal.2d 38, 42 [162 P.2d 8].)

maintenance on the ground of extreme cruelty. The husband cross-complained for divorce on the ground of extreme cruelty.

Upon the conclusion of the trial the trial court made findings to the effect that each of the parties treated the other with extreme cruelty, but concluded that the husband was entitled to an interlocutory judgment and decree of divorce. The interlocutory judgment and decree of divorce which was thereupon entered granted a divorce to the husband on the ground of the wife's extreme cruelty. The decree also divided the community property between the parties and awarded alimony to the wife. The husband was also ordered to pay $500 for the wife's counsel fees, costs of suit, and $750 for the services of the wife's certified public accountant.

The wife contends that the trial court erred in not dividing the community property equally, and with respect to the duration and amount of the alimony payments.

Adverting to the community property, the trial court found that it consisted of the following: (1) a bail bond agency, known as the Central Bail Bond Agency, including the accounts receivable in an undetermined amount, and the Underwriter's Reserve Account in the approximate sum of $25,000; (2) miscellaneous household furniture, furnishings and equipment; (3) one 1959 Ford automobile; and (4) a .5 percent interest in the Underwriter's Reserve Account for a bail bond business operated by the husband's brother, Calvin Elam.

Pursuant to the decree the husband was awarded the bail bond agency together with its accounts receivable, the furniture, fixtures and equipment pertaining thereto, and the $25,000 reserve account. The husband was also awarded the interest in the reserve account of Calvin Elam's bail bond business. The wife was awarded the household furniture, furnishings and equipment in her possession, and a cash sum to be computed and paid as follows: (1) one-third of the difference between $25,000 and the amount of bond forfeitures paid by the husband up to June 7, 1966, on bonds written by the bail bond agency up to December 7, 1965, payable by the husband to the wife at a rate of not less than $500 per month; and (2) one-third of the .5 percent interest in the husband's brother's reserve account as of December 7, 1965, to be paid by the husband to the wife at a rate of not less than $100 per month.

Adverting to the question whether the court should have divided the community property equally, we note that such a division is required where a divorce is granted to both parties. (*De Burgh* v. *De Burgh,* 39 Cal.2d 858, 874 [250 P.2d 598]; *Patterson* v. *Patterson,* 242 Cal.App.2d 333, 348 [51 Cal.Rptr. 339].) ■ Where an equal division of the property is required a court should not attempt to make such a distribution without

first ascertaining the value of the respective items to be divided. (*De Burgh* v. *De Burgh, supra; Patterson* v. *Patterson, supra; Hong* v. *Hong,* 237 Cal.App.2d 239, 240 [46 Cal.Rptr. 710].) We also observe that although the cases establishing these rules deal with situations in which a *divorce* is granted to both parties, these rules apply also to decrees of separate maintenance since the rationale of the cases rests upon the interpretation of Civil Code section 146 which provides for the disposition of property in the case of a decree of separate maintenance as well as in the case of a dissolution of marriage by divorce. (See *De Burgh* v. *De Burgh, supra; Hong* v. *Hong, supra; Patterson* v. *Patterson, supra.*) In the instant case, however, although the court found both parties to be at fault, it only awarded a divorce to the husband. Our inquiry, therefore, is whether the rule of equal division is applicable in the present case.

In considering the question presented, we observe that the rationale of the *De Burgh* case, upon which the other cited cases rely, is that Civil Code section 146 permits an award of more than one-half of the community property only to an innocent spouse and that when a divorce is granted to both parties, neither is innocent and the community property must be equally divided. (39 Cal.2d at p. 874.) The policy evinced in *De Burgh* was relied upon in *Salvato* v. *Salvato,* 195 Cal.App.2d 869, 872 [16 Cal.Rptr. 263], where the husband brought an action for divorce on the ground of extreme cruelty and the wife filed a cross-complaint alleging extreme cruelty and prayed for separate maintenance. There, although the court found that each of the parties was guilty of extreme cruelty toward the other, it granted the husband a divorce and only awarded alimony to the wife. The rationale indulged in by the appellate court in *Salvato* was that since both parties had proved an action for divorce, although the wife did not want a divorce, there was equality of fault.

In two cases subsequent to *Salvato, Barton* v. *Barton,* 230 Cal.App.2d 43 [40 Cal.Rptr. 676], and *Rethorst* v. *Rethorst,* 261 Cal.App.2d 713 [68 Cal.Rptr. 263], the trial court, relying on *Salvato,* awarded the wife alimony, but went farther than *Salvato* and awarded a decree of separate maintenance to the wife and a decree of divorce to the husband. In *Barton* it was specifically held that the court had the power to award the husband a divorce on a finding of the wife's cruelty after a contemporaneous finding of the husband's adultery and the granting of a decree of separate maintenance to the wife. (Pp. 45-46.)[2] Similarly, in *Rethorst,* it was held that a decree which awards a divorce to the husband and a decree of separate

---

[2] In *Barton, supra,* we note from the statement of facts that "The community property was divided." (P. 44.) We assume that this statement means that the property was *equally* divided between the parties. We also note that the property division was not challenged on appeal. (See p. 44.)

maintenance to the wife does not confer upon the parties remedies which are incompatible. (Pp. 718-719.)

■ It is apparent, in the light of the foregoing authorities, that since the trial court expressly found in the instant case that the husband was guilty of extreme cruelty toward the wife, she was entitled to a divorce. ■ Moreover, as indicated in *Rethorst* (p. 719), a party having grounds for divorce can elect to waive the right to a divorce in favor of separate maintenance. ■ Accordingly, the trial court was required to award the wife a decree of separate maintenance and it should have included in its conclusions of law a specification that the wife was entitled to such a decree. Therefore, based upon the finding of extreme cruelty on the part of the husband, we can direct that the conclusions of law be so amended and that based thereon the judgment be amended to contain a decree of separate maintenance in favor of the wife.

The rationale that there can be a coexistence between a decree of separate maintenance to one party and a decree of divorce to the other is not impaired by the rule declared in *Cardinale* v. *Cardinale* (1937) 8 Cal.2d 762, 768-769 [68 P.2d 351], and *Chirgwin* v. *Chirgwin* (1938) 26 Cal.App.2d 506, 508-509 [79 P.2d 772], to the effect that a wife may not enforce a support order obtained by her in the state of her domicile *after* the rendition of a valid ex parte foreign divorce decree in favor of the husband. This rule suggests the principle that a subsequent divorce decree supersedes a prior decree of separate maintenance. *Chirgwin* and *Cardinale* were subsequently overruled by *Lewis* v. *Lewis* (1957) 49 Cal.2d 389, 394 [317 P.2d 987], and *Hudson* v. *Hudson* (1959) 52 Cal.2d 735, 743 [344 P.2d 295], respectively, where it was held that the *Cardinale* and *Chirgwin* rule does not apply in cases where the divorce is obtained ex parte without personal jurisdiction over the defendant spouse. In *Hudson* (p. 743) it was specifically noted that *Cardinale* was decided before the theory of divisible divorce was established in *Estin* v. *Estin,* 334 U.S. 541 [92 L.Ed. 1561, 68 S.Ct. 1213, 1 A.L.R.2d 1412]. In *Lewis* it was held that, although a prior decree of divorce obtained by a husband in Nevada did not preclude the wife, domiciled in Illinois, from obtaining in that state a subsequent decree of separate maintenance adjudicating her right to support because the Nevada court did not have personal jurisdiction of the wife when it rendered its decree of divorce, the Nevada decree was effective to terminate the marital status of the parties where jurisdiction was obtained by substituted service. (P. 397.)

■ The holding in *Barton* and *Rethorst, supra,* when considered in conjunction with that in *Cardinale* and *Chirgwin, supra,* to the extent modified by *Lewis* and *Hudson, supra,* indicates that a decree of separate maintenance can properly coexist insofar as the determination of property

and support rights are concerned, and that where a divorce decree and a decree of separate maintenance adjudicate property and/or support rights of the parties in the same action, the effect of the divorce decree is to supersede the separate maintenance decree only to the extent that the divorce decree terminates the marital status of the parties.[3]

■ We therefore conclude that since the court found that there was equality of fault entitling the wife to the decree of separate maintenance sought by her and justifying the decree of divorce prayed for by the husband, the trial court was required under Civil Code section 146 to divide the community property equally between the parties. This requirement, as we have pointed out above, demands that the trial court first ascertain the value of the respective items of community property to be divided before it attempts to make a distribution. Such a valuation was not made in the instant case.

■ Although he has not appealed, defendant urges that the court erred in finding that there was sufficient evidence to substantiate plaintiff's claim that he was guilty of extreme cruelty. Accordingly, he argues that he is the innocent spouse and that, therefore, an unequal division of the community property in his favor is proper. ■ In making this contention, he relies on the provisions of Code of Civil Procedure former section 956, now section 906, which provides that the respondent, or the party in whose favor the judgment was given, may, without appealing from such judgment, request the reviewing court to and it may review the matters reviewable on appeal for the purpose of determining whether or not the appellant was prejudiced by the error or errors upon which he relies for reversal or modification of the judgment from which the appeal is taken. This provision allows the respondent to ask for a review of the record to determine whether the errors complained of by the appellant were in fact prejudicial, and recognizes that a respondent may assert a legal theory, which, if found to be sound, should result in affirmance notwithstanding appellant's contentions. (*Central Mfg. Dist., Inc.* v. *Board of Supervisors,* 176 Cal.App.2d 850, 857 [1 Cal.Rptr. 733]; *Ratkovitch* v. *City of San Bruno,* 245 Cal.App.2d 870, 887-888 [54 Cal.Rptr. 333]; see 32 State Bar J. 557; and see *Mott* v. *Horstmann,* 36 Cal.2d 388, 393 [224 P.2d 11].)

In the present case the only legal theory asserted by defendant which

---

[3]In the light of *Lewis* and *Hudson, supra,* we apprehend the *Cardinale* and *Chirgwin* rule to mean that a divorce decree granted subsequent to a separate maintenance decree supersedes the latter decree in all respects if the court granting the divorce has personal jurisdiction over both spouses, thus enabling the divorce court to adjudicate the support and property rights of each of the spouses.

could result in affirmance notwithstanding plaintiff's contentions is that there is insufficient evidence to support the finding that he was guilty of extreme cruelty towards plaintiff. In this regard it is apparent, for the reasons pointed out above, that if plaintiff established that defendant was guilty of extreme cruelty she was prejudiced by the error upon which she relies for reversal with respect to the division of the community property unless it can be said that, as a matter of law, there is no evidence to support the trial court's finding that defendant was guilty of extreme cruelty. As observed by the appellate court in *Central Mfg. Dist., Inc., supra,* in its discussion of the applicability of former section 956, a respondent is necessarily bound by findings of fact based upon substantially conflicting evidence. (176 Cal.App.2d at p. 857.)

■ The determination whether there was a wrongful infliction of grievous mental suffering is a question of fact to be deduced from the circumstances of the case in the light of the intelligence, refinement and delicacy of sentiment of the person complaining. (*Keener* v. *Keener,* 18 Cal.2d 445, 447 [116 P.2d 1]; *Barton* v. *Barton, supra.*) ■ Here there was evidence that defendant neglected the bail bond agency by failing to control the activities of his brother, thus jeopardizing the community assets and income and causing plaintiff to work long hours at the agency; that defendant brought about the cancellation of plaintiff's bail agent's license and as a result she could not continue working at the agency; that after the parties separated the gas and lights of plaintiff's residence were turned off because defendant did not provide her with sufficient funds; that plaintiff observed defendant in his automobile late at night in the company of another woman; that defendant gambled; and that this conduct on the part of defendant caused plaintiff to become ill. There was corroboration of the activities of defendant's brother in the bail bond business and the fact that plaintiff was required to work long hours in said business. ■ Corroboration, even though slight, is sufficient; and corroboration of a single act of cruelty is enough. (*Barton* v. *Barton, supra; Hayes* v. *Hayes,* 181 Cal.App. 2d 634, 642 [5 Cal.Rptr. 509]; *Serns* v. *Serns,* 70 Cal.App.2d 527, 529 [161 P.2d 417].) ■ In view of this evidence it cannot be said that the trial court abused its discretion or that the evidence was insufficient as a matter of law to establish defendant's extreme cruelty.

Adverting to the alimony award, we observe that it provides that the husband is to pay to the wife, as and for her support and maintenance, the sum of $400 per month, for a period of six months, or until payments commence with respect to the division of the community property consisting of the bail bond reserve accounts, and thereafter at the rate of $100 per month for a period of 30 months.

■ In the instant case the applicable rule is that stated in *Nunes* v.

*Nunes,* 62 Cal.2d 33, 38 [41 Cal.Rptr. 5, 396 P.2d 37], as follows: "Where a divorce is granted to both parties, alimony may be granted to either, for the basis of liability for alimony is the granting of a divorce against the person required to pay it. [Citations.] In determining whether or not to grant alimony, the court should consider the comparative guilt of the parties, the needs of one spouse, and the ability of the other spouse to contribute support. [Citation.]" It is also an established principle that the granting or refusing of alimony, and the amount thereof, if allowed, is largely in the discretion of the trial court, and its action will not be disturbed in the absence of an abuse of discretion. (*Nunes* v. *Nunes, supra; Hall* v. *Hall,* 42 Cal.2d 435, 442 [267 P.2d 249]; *Millington* v. *Millington,* 259 Cal.App.2d 896, 917 [67 Cal.Rptr. 128].)

 In the light of the applicable rules we must hold that the trial court did abuse its discretion. Here, although we cannot say that there was an abuse of discretion in the court's consideration of the comparative guilt of the parties, it appears that the needs of the wife and the husband's ability to contribute to her support were interrelated with the disposition of the community property in the bail bond reserve accounts. Since the trial court's discretion with respect to the award of alimony was exercised in conjunction with the amount the trial court set aside to the wife as community property, that discretion was erroneously employed in view of our conclusion that a proper division of the property was not made because of the failure to determine the value of each item of community property. Accordingly, since we must remand the case for such value determination and equal division of the property, the court will properly be called upon to again exercise its discretion with respect to alimony in accordance with the applicable rules.

The appeal from the order denying a new trial is dismissed. That portion of the interlocutory judgment awarding and dividing the community property and awarding alimony is reversed. The other portions of the judgment are affirmed. The trial court is directed to determine the valuation of each of the items of community property, to divide the community property equally between the parties, to redetermine the amount of alimony, to make appropriate findings with respect to said determination and redetermination, to amend its findings of fact and conclusions of law in

accordance with the views expressed herein, and to enter the appropriate judgment.

Plaintiff to recover costs on appeal.

Sims, J., and Elkington, J., concurred.

A petition for a rehearing was denied December 30, 1969.