Filed 7/24/14  Gonzalez v. LA County Civil Service Com. CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| LIZA GONZALEZ, <br><br> Plaintiff and Appellant, <br><br><br> v. <br><br><br> LOS ANGELES COUNTY CIVIL SERVICE COMMISSION, <br>    Defendant and Respondent; <br><br><br> COUNTY OF LOS ANGELES et al., <br><br>    Real Parties in Interest and Respondents. | B249773 <br><br> (Los Angeles County <br> Super. Ct. No. BS136578) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Luis A. Lavin, Judge.  Affirmed.

Green & Shinee and Elizabeth J. Gibbons for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

Collins Collins Muir + Stewart LLP, Catherine M. Mathers and Christian E. Foy Nagy for Real Parties in Interest and Respondents.

Appellant Liza Gonzalez (plaintiff) appeals the judgment upholding her termination from her position as sergeant with respondent Los Angeles County Sheriff's Department (department). She contends the superior court erred in sustaining her discharge, which she claims was untimely and based solely on inadmissible hearsay evidence. We find no error, and affirm.

**BACKGROUND**

In June 2007, off-duty deputies Brian Richards and Joshua Titel were involved in an altercation with firefighter Stephen Paige, who was beaten and kicked while lying motionless on the ground. The incident occurred outside the home of off-duty deputy Christy Goodman, who was dating both Paige, the father of her child, and Titel. According to Goodman, during the assault she was physically restrained from intervening by two other off-duty sheriff's personnel, plaintiff and Julie Petrelli. Plaintiff, who was dating Richards, acknowledged that she had socialized with Richards, Titel, Goodman, and Petrelli earlier that day, but claimed that she and Petrelli had left the location shortly before the fight began.

While the matter was under criminal investigation, the department notified plaintiff's attorney that the one-year limitation period for conducting a disciplinary investigation was tolled under Government Code section 3304[1] while the criminal action was pending. During the grand jury proceedings, Goodman and plaintiff provided conflicting testimony as to whether plaintiff was present during the assault. After the grand jury returned an indictment against Richards and Titel, plaintiff was asked by her supervisor to sign a waiver that expressly acknowledged the tolling as to her, of the one-year period under section 3304 while the criminal investigation of the assault was pending. Plaintiff signed the waiver in November 2008 and did not become the subject of an investigation at that time.

---

[1] All undesignated statutory references are to the Government Code unless another code is cited.

After Richards and Titel were sentenced in April 2009, the department began an internal affairs investigation that eventually included an investigation of plaintiff's whereabouts and statements concerning the assault. Based on evidence that plaintiff had falsely denied witnessing the assault, the department issued a letter of intent to discharge in April 2010, followed by a notice of discharge in May 2010, which were based on the following grounds: lying during a criminal investigation, lying during an internal investigation, providing false testimony to the grand jury, failing to file an accurate report regarding the fight, failing to perform the duties expected of a supervisor, bringing discredit to herself and the department by providing false testimony to the grand jury, violating the department's policy and procedures by providing false testimony to the grand jury, and attempting to secure a copy of the incident report from another station before reporting the matter to her supervisor.

Plaintiff filed an administrative appeal with defendant Los Angeles County Civil Service Commission (commission), which upheld her termination. She then filed a petition for administrative writ of mandate seeking to overturn the commission's decision. (Code Civ. Proc., § 1094.5.) The superior court denied the petition and this appeal followed.[2]

Plaintiff contends on appeal that the disciplinary charges were untimely and based solely on inadmissible hearsay evidence. Additional facts relevant to her contentions are discussed below.

**DISCUSSION**

In an administrative writ of mandate proceeding, the "trial court applies its independent judgment to the department's administrative decision, but with a strong presumption the department acted properly. (Code Civ. Proc., § 1094.5, subd. (c); *Fukuda v. City of Angels* (1999) 20 Cal.4th 805, 812, 817.)" (*Chrisman v. City of Los*

---

[2] The real parties in interest—County of Los Angeles, the department, and John L. Scott, in his capacity as Sheriff of Los Angeles County (collectively, the department)—filed a joint respondents' brief.

*Angeles* (2007) 155 Cal.App.4th 29, 33.) On appeal, we review the trial court's factual findings for substantial evidence and independently review the trial court's legal findings. (*Ibid.*)

# I

## The Disciplinary Charges Were Timely

The timeliness of the department's disciplinary proceeding is governed by section 3304, which "provides a number of procedural rights for public safety officers who may be accused of misconduct in the course of their employment. Subdivision (d), providing for a limitations period, states in pertinent part: 'Except [as otherwise provided,] no punitive action, nor denial of promotion on grounds other than merit, shall be undertaken for any act, omission or other allegation of misconduct if the investigation of the allegation is not completed within one year of the public agency's discovery . . . of an act, omission, or other misconduct. . . .'" (*Mays v. City of Los Angeles* (2008) 43 Cal.4th 313, 320, quoting § 3304, subd. (d).)

### A.    *Additional Facts Relevant to the Timeliness Issue*

On the day after Paige was assaulted in June 2007, plaintiff told her supervisor, Captain Maxwell, that her boyfriend Richards was in a fight but that she was not present. She also told Maxwell that she had tried to obtain a copy of the report concerning the incident.

Two weeks later, in July 2007, plaintiff was interviewed by Sergeant Scully of the department's internal criminal investigations unit. After plaintiff denied being present during the fight, Scully informed Maxwell that plaintiff was lying about the incident.

After the criminal investigation began, the department notified plaintiff's attorney in May 2008 that the one-year period for conducting its disciplinary investigation was tolled under section 3304 until the criminal action was completed. In September 2008, plaintiff testified before the grand jury under a grant of criminal immunity and denied witnessing the incident. However, Goodman testified that both plaintiff and Petrelli were

present during the incident and had grabbed her arms to prevent her from intervening in the fight.

When the grand jury testimony was released, plaintiff was asked by Maxwell to sign an "Employee's Waiver of Time." She signed the waiver in November 2008 after being told that this would allow her to maintain the status of a witness and avoid becoming the subject of an investigation at that time. The waiver stated that under section 3304, the department must "complete its investigation of any alleged misconduct and . . . notify the involved party of any proposed discipline within one year from the Department's discovery of the allegation by the person authorized to initiate an investigation." The waiver further stated that plaintiff was waiving "the one year time period set forth in . . . Section 3304," and that the one-year period would "be tolled during the pendency of the criminal adjudication of the incident."

In April 2009, the criminal case ended when Richards and Titel were sentenced for the assault. The department then began its internal affairs investigation regarding the incident. After becoming the subject of an internal affairs investigation in September 2009, plaintiff was interviewed in November 2009 and reiterated that she was not present during the assault.

In April 2010, plaintiff received a notice of intent to discharge. After being discharged the following month, she pursued an administrative appeal. She argued in relevant part that the disciplinary charges were untimely because they were not brought within a year of her initial denial of witnessing the assault in July 2007, which the department did not believe to be true. In support of its termination decision, the department argued that the statute of limitations was tolled while the criminal action was pending. In addition to plaintiff's written waiver, the department cited the following provisions of section 3304: (1) the criminal investigation tolling provision, which states that if "the act, omission, or other allegation of misconduct is also the subject of a criminal investigation or criminal prosecution, the time during which the criminal investigation or criminal prosecution is pending shall toll the one-year time period" (§ 3304, subd. (d)(2)(A)), and (2) the multiple-employee extension provision, which

5

extends the one-year deadline if "the investigation involves more than one employee and requires a reasonable extension" (§3304, subd. (d)(2)(D)).

Although the commission rejected the department's statutory tolling and extension arguments, it concluded that plaintiff's written waiver was valid, thus tolling the one-year period while the criminal action was pending. After deducting the time consumed by the criminal action, the commission concluded the disciplinary charges were timely filed within the one-year limitations period.

In the administrative writ of mandate proceeding, the department raised the statutory tolling and extension provisions but the superior court did not rely on either provision. Finding that the written waiver was valid, the superior court upheld the commission's finding that the disciplinary charges were timely.

### B. The Authorities Cited by Plaintiff Do Not Support Her Contention That the Disciplinary Charges Were Untimely

Plaintiff's untimeliness objection focuses on the unfairness of allowing the department to question her repeatedly about a denial that it believed to be false in order to create new one-year limitations periods. In support of her contention, plaintiff cites *Alameida v. State Personnel Bd.* (2004) 120 Cal.App.4th 46 (*Alameida*) and *Crawford v. City of Los Angeles* (2009) 175 Cal.App.4th 249 (*Crawford).* Neither case supports her contention.

In *Alameida*, a correctional officer was discharged for dishonesty after he denied committing a sexual offense that was beyond the statute of limitations. In his administrative appeal, he was reinstated on the ground that the dishonesty allegation was time-barred. After the employer's petition for administrative writ of mandate was denied, the judgment was affirmed by the appellate court, which stated, "To allow the dishonesty charge to survive would defeat the purpose of the limitations period, which is to ensure that conduct that could result in discipline should be adjudicated when memories are fresh. To allow the employer to prove the underlying charges in order to demonstrate that an employee was dishonest in denying the underlying charges would defeat the

6

purpose of the [Public Safety Officers Procedural Bill of Rights] Act [(§ 3300 et seq.)], which reflects the Legislature's declaration that 'effective law enforcement depends upon the maintenance of stable employer-employee relations, between public safety employees and their employers." (120 Cal.App.4th at p. 62.)

We conclude that *Alameida* does not apply where, as in this case, a peace officer makes false statements about a crime that was still subject to prosecution. This case is similar to *Crawford*, which stated that extending "*Alameida* to the scenario presented here, in which the false statement is alleged to have been made before expiration of the statute of limitations on the underlying conduct, would deprive the [employer] of the power to discipline an employee for making false statements during an investigation." (175 Cal.App.4th at p. 257.) *Crawford* noted that "applying *Alameida* to these facts would usurp [the employer's] right to fix its own terms of conduct for employees." (*Ibid.*)

We agree with *Crawford* that "[t]ermination based upon a false statement by a peace officer is indisputably within the [employer's] power," and provides "a sound policy reason for not extending *Alameida* to the factual scenario in this case." (*Crawford*, *supra*, 175 Cal.App.4th at p. 257.) The concern faced by the court in *Alameida*—that the employer was using a dishonesty allegation to prove an underlying offense that was itself outside the statute of limitations—does not exist where the underlying offense is not time-barred when the false statements are made.

C.     *The One-Year Statute Was Tolled During the Criminal Action by the Written Waiver and the Statutory Provisions for Criminal and Multiple-Employee Investigations*

In further contrast with *Alameida*, the employer in this case argued that the disciplinary charges were timely in light of the officer's written waiver of section 3304, the tolling provision for criminal investigations (§ 3304, subd. (d)(2)(A)), and the

7

extension provision for multiple-employee investigations (§ 3304, subd. (d)(2)(D)).[3] We turn first to the waiver, which the trial court found to be a valid and knowing waiver of the one-year limitation period of section 3304.

"The interpretation of a written instrument is essentially a judicial function to be exercised according to the generally accepted canons of interpretation so that the purposes of the instrument may be given effect." (*In re Marriage of Smith* (2007) 148 Cal.App.4th 1115, 1120.) In interpreting a written agreement, we "look first to the language of the contract . . . to ascertain its plain meaning or the meaning a layperson would ordinarily attach to it." (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 18.) "A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." (Civ. Code, § 1636.) The intent is to be inferred, if possible, solely from the written provisions of the contract. (Civ. Code, § 1639.) Language in a contract must be interpreted as a whole and in the circumstances of the case, and cannot be deemed ambiguous in the abstract. (*Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1264–1265; see also Civ. Code, §§ 1641, 1647.)

The waiver, in addition to quoting the relevant language of section 3304, stated that plaintiff was waiving "the one year time period set forth in . . . Section 3304," which would "be tolled during the pendency of the criminal adjudication of the incident." In upholding the waiver, the trial court stated: "[T]he plain language of the waiver supports a finding that [plaintiff] made a knowing and valid waiver. The waiver specifically acknowledges that 'I have read and understand Government Code section 3304, attached hereto, requiring the Department to complete its investigation of any alleged misconduct

---

[3] In her reply brief, plaintiff objects that the department waived the tolling and extension provisions by failing to raise them below and by failing to file a separate petition for administrative writ of mandate. The former objection is belied by the record, which shows that the tolling and extension provisions were raised by the department below. The latter objection is contrary to the rule that a respondent may assert a legal theory that if found to be valid, will result in an affirmance notwithstanding the appellant's contentions. (*Central Manufacturing District, Inc. v. Board of Supervisors* (1960) 176 Cal.App.2d 850, 857.)

8

and to notify the involved party of any proposed discipline within one year from the Department's discovery of the allegation by the person authorized to initiate an investigation.' . . . The waiver notes that 'I agree and accept the terms set forth herein and hereby execute it voluntarily and with full understanding of its consequences.' . . . Finally, the waiver quotes the precise language of Government Code section 3304. [Plaintiff], a long-term peace officer with the Department, knew how to read a waiver form."

Like the trial court, we conclude that the waiver, which we also find to be unambiguous, constituted a knowing and valid waiver of the one-year limitation period while the criminal action was pending. (See § 3304, subd. (d)(2)(B) [if the public safety officer waives the one-year period in writing, the time period shall be tolled for the period of time specified in the written waiver].) We conclude that the waiver applies to all of the charges, regardless of when the specific statements were made. Although plaintiff argues the waiver did not resurrect expired charges based on her initial July 2007 statements, here there were no expired charges because the matter was still under criminal investigation when the false statements were made.

As provided in section 3304, if "the act, omission, or other allegation of misconduct is also the subject of a criminal investigation or criminal prosecution, the time during which the criminal investigation or criminal prosecution is pending shall toll the one-year time period." (§ 3304, subd. (d)(2)(A).) Applying this provision to the undisputed facts of this case, we conclude that as to plaintiff's statements concerning the assault, the one-year period was tolled while fellow deputies Richards and Titel were under criminal investigation or prosecution.

Plaintiff argues that subdivision (d)(2)(A)'s tolling provision does not apply because she was never the subject of a criminal investigation or prosecution. However, that tolling provision is not limited to the peace officer who is the subject of the criminal investigation. By its terms, its scope is much broader, because it applies to the act, omission, or other allegation of misconduct that is the subject of an investigation. In this

9

case, the tolling provision applied to a criminal offense that, while assault charges were pending, plaintiff denied witnessing.

Alternatively, we conclude the department was entitled to a reasonable extension of the one-year period under subdivision (d)(2)(D), which applies where there is an investigation that involves multiple employees and a reasonable extension is required. The need for a reasonable extension is readily inferable in this case. As to Richards and Titel, the one-year period was tolled under subdivision (d)(2)(A) while their criminal action was pending. It would therefore make sense to extend the one-year period for the other employees who had witnessed the assault, including plaintiff. For all of these reasons, we conclude the disciplinary charges were timely.

## II

### The Judgment Is Supported by Substantial Evidence

Plaintiff contends the trial court erred in upholding her discharge based solely on the inadmissible hearsay statements of Goodman's neighbors. We are not persuaded.

In rejecting this argument, the trial court stated that "in addition to Goodman's neighbors, Goodman testified that [plaintiff] was present during the fight."[4] Hearsay evidence is "evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated." (Evid. Code, § 1200, subd. (a).) As the trial court correctly concluded, Goodman's in-person testimony at the administrative hearing was not hearsay evidence.

---

[4] The trial court recounted Goodman's testimony as follows: "Goodman testified that Petrelli was a passenger in Goodman's vehicle and both [plaintiff] and Petrelli held Goodman back from interfering in the fight. . . . Petitioner and Petrelli each held one of Goodman's arms. . . . Before other law enforcement officials arrived, Titel and Richards yelled at [plaintiff] and Petrelli to 'get out of here and leave.' . . . Goodman witnessed [plaintiff] driving away from the scene with Petrelli in [plaintiff's] car. . . . Goodman contends that [plaintiff] left before responding deputies arrived at the scene. . . . This evidence positively identifies [plaintiff] as a witness to the altercation and places [plaintiff] at the scene during the altercation."

10

Although plaintiff disparages Goodman's testimony as "self-serving, inherently unbelievable, and contradictory," the record shows otherwise.   Not only did Goodman provide strong and unequivocal testimony regarding plaintiff's presence during the fight, her testimony was corroborated by neighbors who referred to the presence of more than one female.

In any event, Goodman's testimony, which was found credible by the administrative hearing officer and the trial court, was sufficient to establish plaintiff's presence during the fight.  "Subject to an exception not pertinent here, 'the direct evidence of one witness who is entitled to full credit is sufficient for proof of any fact.' (Evid.Code, § 411.)  Under this rule the trier of fact may not arbitrarily disregard the uncontradicted or unimpeached testimony of a witness, unless that testimony is inherently improbable.  [Citations.]"  (*DeMiglio v. Mashore* (1992) 4 Cal.App.4th 1260, 1270.)

Finally, we note that the neighbors' testimony at the administrative hearing also was not hearsay evidence.  The trial court correctly found that their extrajudicial statements were admissible under various exceptions, including Evidence Code sections 1236 (prior consistent statements of a witness) and 1240 (spontaneous statements, such as those made by neighbors during  911 calls while the assault was in progress).

**DISPOSITION**

The judgment is affirmed.  Respondents shall recover their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


                                        EPSTEIN, P. J.
We concur:



WILLHITE, J.                        EDMON, J.*

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11