[Civ. No. 1910.   Third Appellate District.—April 17, 1919.]

## L. V. MANFORD, Respondent, v. MENIL SINGH, Appellant.

[1] CONSTITUTIONAL · LAW—INALIENABLE RIGHTS OF INDIVIDUALS—EF-FECT OF PROVISION.—The phrasing of the inalienable rights of the individual in section 1, article I, of our state constitution effects in no degree an enlargement or abridgment of the civil immunities of the citizen, nor does it operate to limit or increase the authority of the legislative department of the state government.

[2] WAGE LAW—CONSTITUTIONALITY AS APPLIED TO INDIVIDUALS.—The act of May 1, 1911 (Stats. 1911, p. 1268), providing for the payment of wages, and the amendment thereof, approved April 28, 1915 (Stats. 1915, p. 299), is not unconstitutional as applied to natural persons.

[3] ID.—DESIGN OF LAW—CONSTRUCTION OF.—While the design of such wage law is to protect the employee and to promote the welfare of the community, without defeating that purpose it should be construed so as to hamper as little as possible the valuable right and privilege of making contracts.

APPEAL from a judgment of the Superior Court of Glenn County.   Wm. M. Finch, Judge.   Affirmed.

The facts are stated in the opinion of the court.

Claude F. Purkitt for Appellant.

George R. Freeman for Respondent.

BURNETT, J.—The appeal is on the judgment-roll and involves the construction of "An act providing for the payment of wages," approved May 1, 1911 (Stats. 1911, p. 1268), and the amendment thereof, approved April 28, 1915 (Stats. 1915, p. 299).   The question was carefully considered by this court in *Moore* v. *Indian Spring Channel Gold Min. Co.*, 37 Cal. App. 370, [174 Pac. 378], and the legislation was upheld as within the constitutional authority of the law-making power.   Therein many decisions are reviewed, and the reasons justifying such legislation are clearly stated.   Our faith in the legal soundness of that decision has not been shaken, and its authority is of controlling force in the instant case.

Appellant, however, contends that a distinction exists between a corporation and a natural person as to the operation of the law, which was not urged or considered in the Moore case, and that while the statute may be and is valid as to the former, it must fail when challenged by an individual as violative of his fundamental rights expressed in section 1, article I, of our state constitution as follows: "All men are by nature free and independent, and have certain inalienable rights, among which are those of enjoying and defending life and liberty; acquiring, possessing, and protecting property; and pursuing and obtaining safety and happiness," and also section 13 of said article: " . . . nor be deprived of life, liberty, or property without due process of law." It is claimed that due consideration of these primary maxims in connection with the fourteenth amendment to the federal constitution will furnish protection to the individual employer against the application of the drastic penalty of said law. [1] It is manifest, though, that as far as any substantial right or privilege of the citizen is concerned and the protection which must be accorded to it by the law, said provision of the state constitution prescribes nothing that is not comprehended by said section of the federal constitution. Of course, the sonorous phrasing of the inalienable rights of the individual in said section is felicitous and impressive, but it effects in no degree an enlargement or abridgment of the civil immunities of the citizen, nor does it operate to limit or increase the authority of the legislative department of the state government. And said section 13 is manifestly in scope and purpose identical with said provision of the federal constitution. It may be said, therefore, that the principle of constitutional law invoked by appellant was the subject of earnest attention in the Moore case, *supra.*

In support of his contention that such legislation may be upheld as against a corporation but not against an individual, appellant cites the case of *Leep* v. *St. Louis etc. R. Co.,* 58 Ark. 407, [41 Am. St. Rep. 109, 23 L. R. A. 264, 25 S. W. 75], wherein the supreme court of Arkansas held that such legislation was valid as to a corporation by reason of the fact that under the act or charter of incorporation there was reserved the power in the legislature to amend the corporate charter. It was concluded that in the case of a railroad company the legislature in its wisdom, finding that "better servants and

service could be secured by the prompt payment of their wages on the termination of their employment,'' and that thereby the legitimate purpose of the corporation would be promoted, might require the company to pay its employees at the termination of their employment, although such legislation might interfere with contracts purely and exclusively private. As against the railroad corporation, the statute involved in that case was upheld for the reason stated, while it was declared to be unconstitutional as applied to the individual for the reason that it was an unwarranted interference with the constitutional right to make contracts.

The opinion discusses interestingly and persuasively the essential principles involved in such inquiry, and it is well worth careful consideration, although, manifestly, it is not of authority here. Moreover, there is to be said of the decision, that the discussion as to the effect of the law upon natural persons was somewhat gratuitous, since the action was against a corporation solely. Besides, the statute therein construed differed materially from our law on the subject in that it penalized the employer for discharging the employee either *with* or *without cause* and by implication at least it denied the employer the ordinary defenses for the misconduct of the employee or his failure to comply with the terms of his contract. Under the peculiar terms of the statute of Arkansas it would not be surprising if the supreme court had declared it to be invalid even as against a corporation.

[2] But appellant concedes that our statute is within the sanction of the constitution if it can be reasonably held that the prompt payment of employee's wages is a matter that affects the public generally and is within the police power of the legislature. That suggests the very reason why such legislation is permissible, imposing, as it does, a certain limitation upon the right to contract.

This consideration is fully set forth in the Moore decision, *supra,* and there is no necessity for further specific attention to it.

[3] We may add that, manifestly, the statute should have reasonable construction. Its design is to protect the employee and to promote the welfare of the community. Without defeating that purpose it should be construed so as to hamper as little as possible the valuable right and privilege of making contracts. But it is to be observed that the most formidable

objection to the statute derives its principal force from the supposed hardships of a hypothetical case wherein the employer is without fault or the employee is guilty of culpable conduct. The statute is not subject to such reproach. It contemplates that the penalty shall be enforced against an employer who is at fault. It must be shown that he owes the debt and refuses to pay it. He is not denied any legal defense to the validity of the claim. Indeed, the fullest right to contract as to payment is but slightly restricted and an employer can easily provide in advance for the contingencies that may arise under the statute. If he refuses to pay what is due as therein provided, it is not unjust that he should be subjected to a penalty.

The judgment is affirmed.

Chipman, P. J., and Hart, J., concurred.