[Civ. No. 6231. Third Appellate District.—February 13, 1940.]

I. L. DAVIS, Respondent, v. EDWARD MORRIS et al., Appellants.

Dennett & Zion for Appellants.

Gumpert & Mazzera and George K. Smith for Respondent.

THOMPSON, J.—A joint and several judgment was rendered against the appellants, as members of a mining partnership, for unpaid wages of a superintendent of the enterprise, together with a penalty for wilfully failing to pay the same as provided by section 203 of the Labor Code of California. From that judgment this appeal was perfected.

It is contended the judgment is not supported by the evidence; that the wages were not due, for the reason that the plaintiff merely contributed his services as a member of the partnership; that the written agreement of partnership establishes a limitation of liability against each partner, and that the penalty imposed is not warranted because the failure to pay the wages was not "wilful" since, in good faith, the defendants believed they were not due to the superintendent who contributed his services as a member of the partnership.

The defendants held a lease of the Moccasin Gold Mine near Coulterville in Tuolumne County, which they operated under a written agreement of partnership for a period of time. The agreement, which was dated February 27, 1937, was signed by each of the defendants, but it was not recorded. It was not signed by the plaintiff. He had no knowledge of that agreement. It provided for a limitation of liability in the sum of $250 on the part of each partner. The agreement further provided that the partners were to share equally in the cost of machinery and equipment to be purchased for an aggregate amount not to exceed $3,000. They were to participate equally in the profits and losses of the business.

Regarding their interest in the mine, Mr. Morris testified: "We had a lease . . . to explore for gold ore." He said the partners had "a mutual arrangement of equal interest (in the mine) of each one of five men". They agreed to subsequently incorporate the enterprise, but the record fails to show that the corporation was ever perfected.

Regarding the employment of plaintiff as a superintendent there is a conflict of evidence. But there is adequate proof that he was so employed at an agreed compensation of $10 per day. All of the partners knew of that employment and saw him working in the mine. Several workmen, other than the superintendent, were also employed in the mine. A shaft was sunk and a tunnel was extended. Quartz was extracted and numerous tests were assayed and reported to the partnership under the direction of the plaintiff. He supervised the workmen and kept the payroll accounts. The plaintiff worked in the mine as supervisor eighty-six days, from April 5, 1937, to July 17, 1937, upon which last-mentioned

date the mine was "shut down" by the appellants. He was paid on account of his claim for wages only the sum of $150. The evidence clearly shows that the plaintiff was not a member of the mining partnership. He said in that regard: "I didn't know anything about their financial setup. I didn't know how much money they had in there, or anything about it." He testified that he was not a member of the partnership, and that he took no part in organizing the mining enterprise; that he was merely hired to act as their superintendent. He was a skilled miner, having had many years of experience as a mining superintendent.

The written agreement between the defendants, and the evidence disclosed by the record clearly indicate that the enterprise which the appellants were maintaining was a mining partnership operated under the fictitious name of Moccasin Mining Company. (Secs. 2511–2513, Civ. Code; *Treat* v. *Murdock*, 8 Cal. (2d) 316 [65 Pac. (2d) 881]; *Michalek* v. *New Almaden Co., Inc.*, 42 Cal. App. 736 [184 Pac. 56].) It is immaterial that the defendants were not sued as a partnership. They were sued as joint and several debtors, and the court properly rendered judgment against them as such. (Sec. 1659, Civ. Code.) As members of the mining partnership each defendant was liable for the obligations of the enterprise. Each member thereby became the agent of the enterprise with authority to bind it in the usual manner for all purposes for which it was organized. (Sec. 2403, Civ. Code; *First Nat. Bank of Dixon* v. *Spangler*, 49 Cal. App. 133 [192 Pac. 874]; *Jacobson* v. *Lamb*, 91 Cal. App. 405, 410 [267 Pac. 114].) The court therefore properly rendered judgment against the defendants jointly and severally.

There is substantial evidence that the plaintiff was not a member of the mining partnership, and that he had no knowledge of the provision in the written agreement which specified a limitation of liability of $250 against each partner. Moreover, the partners, apparently disregarded that limitation, and by common agreement, incurred indebtedness beyond that sum. They all knew of the employment of the plaintiff at $10 per day, and saw him working in the mine. Their conduct constituted a tacit approval of his employment, even though the aggregate amount of his wages ex-

ceeded the limitation of liability expressed in their written agreement of partnership. They are estopped from denying liability for that obligation. With respect to defendants' disregard of the limitation of the amount of indebtedness authorized by the terms of the written agreement, and regarding their approval of plaintiff's employment, Mr. Morris testified:

"Q. Did each of you put up any money in connection with this arrangement? A. Yes we did. Q. Do you know about how much? A. Oh, I don't think I could give you the exact sum; *several hundred dollars. . . . We started off with a fixed amount and that varied as times went on and the obligations grew. . . .* Q. Were there any meetings or discussions held by these defendants, including yourself, after Mr. Davis had gone to work, regarding payment of his $10.00 per day? A. Yes, there were discussions. Q. And I take it at those discussions the entire group were present? A. Well, not always. Maybe sometimes. . . . We were more or less left with the responsibility. . . . On some occasions we had very formal meetings in which the matters of finances and obligations were fully discussed."

The employment of the plaintiff as superintendent of the mine was apparently within the very purpose for which the enterprise was organized and maintained, and the partnership is therefore bound by the obligation to pay his agreed wages. Even though his employment was not specifically approved by each member of the partnership, the contract of one of them would bind each member of the organization. (Sec. 2403, Civ. Code.)

The appellants contend that under the circumstances of this case the court was not authorized by section 203 of the Labor Code to impose the penalty of thirty days' pay at the rate of the *per diem* wages, aggregating the sum of $300, for the reason that the defendants, in good faith, believed that he was not entitled to wages, because he was a partner with them in the mining enterprise, and merely contributed his services as a superintendent on account of that relationship. That section provides in part:

"If an employer wilfully fails to pay, without abatement or reduction, in accordance with Sections 201 and 202, any wages of an employee who is discharged *or who quits,* the wages of such employees shall continue *as a penalty* from

the due date thereof at the same rate until paid, or until an action therefor is commenced; but such wages shall not continue for more than thirty days. . . . ''

The statute clearly imposes the penalty for wilful failure to pay the wages of an employee immediately upon his discharge, pursuant to section 201 of the same code. Such penalties have been frequently upheld as valid. (*Manford* v. *Singh*, 40 Cal. App. 700 [181 Pac. 844]; 14 McKinney's New Cal. Dig., p. 371, sec. 15; *Chicago, Rock Island & Pac. Ry. Co.* v. *Russell*, 173 Ark. 398 [292 S. W. 375, 51 A. L. R. 1206, and note].) That statute has been held to be constitutional. (*Manford* v. *Singh, supra.*) The legislature has seen fit to impose the penalty for wilful failure to pay wages when they are due. We may not question the propriety of that legislation. The trial court specifically found that the defendants *wilfully* failed to pay the wages when they were due. That finding is supported by substantial evidence. It was the sole province of the trial court to determine whether the defendants were in good faith in claiming that wages were not due because the plaintiff contributed his services as a member of the partnership. That issue was decided against them. With that conclusion we may not interfere, since there is a conflict of evidence in that regard.

The term ''wilful'', as it is used in section 203 of the Labor Code, does not mean that the refusal to pay wages must necessarily be based on a deliberate evil purpose to defraud workmen of wages which the employer knows to be due, in order to subject him to the penalty. In the case of *May* v. *New York Motion Picture Corp.*, 45 Cal. App. 396, 404 [187 Pac. 785], it was held that the term ''wilful'' in its ordinary use, merely means that one intentionally fails or refuses to perform an act which is required to be done. It is said in that regard:

''In civil cases the word 'wilful' as ordinarily used in courts of law, does not necessarily imply anything blameable, or any malice or wrong toward the other party, or perverseness or moral delinquency, but merely that the thing done or omitted to be done, was done or omitted intentionally. It amounts to nothing more than this: That the person knows what he is doing, intends to do what he is doing, and is a free agent.'' (Citing cases.)

■ There is no merit in the contention that because the plaintiff was a superintendent in the mine, as distinguished from an ordinary laborer, that he was therefore not such an "employee" as is entitled to the penalty provided for by the terms of section 203, *supra*. (*Christie* v. *Commercial Casualty Ins. Co.*, 6 Cal. App. (2d) 710, 715 [45 Pac. (2d) 263].) It was there held that a foreman of construction work came within the term of workmen or laborers. Moreover, section 203, *supra*, is much broader in its application than the mere use of the term "workmen". It applies the penalty to a wilful failure to pay "an employee". We have no doubt that term includes the superintendent in a mine.

The judgment is affirmed.

Pullen, P. J., and Tuttle, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 14, 1940, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 11, 1940.