FOSTER, P. J., Dissenting.
In the majority opinion, my colleagues address three issues of first impression in California:
1. Under Labor Code[1] section 206, subdivision (b), may an employer be subjected to treble damages for failure to pay, within 10 days after notice, an award of the Labor Commissioner, when the employer timely and successfully appeals from the award?
2. What is the meaning of the phrase, “until an action therefor [for wages] is commenced” contained in section 203 as marking the termination of “waiting time” penalties provided by that section? and
3. When an employer appeals from an award of the Labor Commissioner and, after a trial de novo, ultimately obtains a judgment substantially reducing its obligations to an employee, is the employer “unsuccessful in such appeal” and thereby obligated by section 98.2, subdivision (b), to pay the employee’s costs and attorneys’ fees on the appeal?
In my opinion, they decide the first issue correctly; decide the third incorrectly; and decide incorrectly the second, an issue which on the record before us should never have been decided at all.
The basic facts, as disclosed by the settled statement and the clerk’s transcript, are without conflict.
Defendant Mary E. Jackson was employed as a bookkeeper by plaintiff Triad Data Services, Inc., (Triad) under a written contract. The contract provided that Jackson would receive a salary of $20,000 per year and, upon termination, would be entitled to 30 days severance pay. On Friday, May 8, 1981, she was terminated for cause, the sufficiency of which is not in issue.
On the following Monday, May 11, 1981, she filed a complaint with the Labor Commissioner seeking $2,310 as severance pay and $346.50 as vacation pay, a total claim of $2,656.50. In response to the commissioner’s letter of May 21, 1981, Triad on May 28 answered, alleging that Jackson was entitled to severance pay equal to only one month’s salary, or $1,666, denying that she was entitled to both severance pay and vacation pay, and alleging that the severance pay amount should be reduced by $134.62 because of vacation overdrawn by Jackson.
The Labor Commissioner, on August 24, 1981, issued his “Order, Decision or Award,” awarding Jackson the sum of $4,585, comprised of *Supp. 17 $2,275 for severance pay and $2,310 “as and for waiting time penalties in accordance with the provisions of section 203 of the Labor Code.” Triad filed a timely appeal.
After a trial de novo in the municipal court, the trial judge gave judgment for wages or compensation of $1,631, consisting of severance pay of $1,666[2] less $35 for overdrawn vacation. He denied to Jackson any waiting time penalties under section 203. However, he awarded to Jackson “Punitive damages as per sec. 206(b) of the Labor Code” in the sum of $4,998, an amount equal to treble the compensation awarded, and assessed against Triad, attorney’s fees of $1,000 and costs pursuant to section 98.2 as an “unsuccessful” party filing an appeal. Triad has appealed from this judgment.
1
I concur in the decision of the majority striking from the judgment the award of treble damages.[3] To permit such an award for failure to pay the amount required by the Labor Commissioner’s decision, when there has been a timely appeal from the decision, is contrary to the clearly expressed legislative intention to give effect to the commissioner’s determination only when it has achieved the status of a final order. Moreover, to permit the employer to be penalized by an award of treble damages when he has timely appealed would discriminate against the employer and have a chilling effect upon the exercise of his appeal rights.
Section 206, subdivision (b) provides: “(b) If, after an investigation and hearing, the Labor Commissioner has determined the validity of any employee’s claim for wages, the claim is due and payable within 10 days after receipt of notice by the employer that such wages are due. Any employer having the ability to pay who willfully fails to pay such wages within 10 days shall, in addition to any other applicable penalty, pay treble the amount of any damages accruing to the employee as a direct and foreseeable consequence of such failure to pay.”
*Supp. 18 By its terms, the section is operative only “after an investigation and hearing” and when the Labor Commissioner “has determined the validity” of the employee’s claim. Use of the terms “investigation,” “hearing”, and “determined” is an apparent cross-reference to the procedure, established by sections 98 et seq., for determining the validity of an employee’s claim for wages. Thus subdivision (a) of section 98 provides in significant part: “(a) The Labor Commissioner shall have the authority to investigate employee complaints. The Labor Commissioner may provide for a hearing in any action to recover wages, penalties, and other demands for compensation properly before the . . . Labor Commissioner . . . and shall determine all matters arising under his or her jurisdiction. ” (Italics added.)
This subdivision and the ensuing subdivisions in section 98 set forth a detailed procedure for such determination. Section 98.1, subdivision (a), indicates that the commissioner’s determination is to be by “order, decision, or award.” The same subdivision requires service of the decision upon the parties and notice to them of their right to appeal, and “that failure to do so within the period prescribed by this chapter shall result in the decision or award becoming final and enforceable as a judgment . . . .’’By section 98.2, subdivision (c), the Labor Commissioner’s decision or award is deemed a final order only “[i]f no notice of appeal is filed within 10 days of receipt of the notice of decision or award . . . .”
These consistent and repeated references to the necessity of a “final” decision by the Labor Commissioner, and the explicitly stated reservation that there is no final order if a timely notice of appeal has been filed, in my opinion, compel the conclusion that there has been no determination by the Labor Commissioner until his order has become final. In the circumstances of the present case, in which Triad had filed a timely notice of appeal from the commissioner’s award, subdivision (b) of section 206 is inapplicable, and it was error to award punitive damages pursuant to that subdivision.
2
The majority opinion states: “Plaintiff further postulates that the defendant is not entitled to penalty sums for ‘waiting’ time under section 203 of the Labor Code as defendant was terminated on May 8, 1981, and ‘commenced an action’ on May 11, 1981, by filing a claim with the Labor Commissioner.” (Ante, at pp. Supp. 8, 9.) It “modifies” the judgment by “substituting” for the erroneous award of punitive damages an award of waiting time penalties pursuant to section 203. Since the trial court denied any waiting time penalties, the majority in effect reverse that denial and now award them to respondent. Such a “modification” is correct only if the trial court was in error in its decision denying them and this court has authority *Supp. 19 to reverse that decision and award them. I believe that in the procedural posture of this case this court has no such authority and it would be error to do so in any event.
(a) The Procedural History of This Case
Judgment of the trial court was entered on December 2, 1981, and a clerk’s notice of entry was served on the parties on the same date. Although a timely appeal was taken by plaintiff, defendant did not appeal from the judgment, and the decision embodied in it, denying her waiting time penalties under section 203, is now final.
Appellant’s and respondent’s briefs were filed, in neither of which was any claim made that the trial judge erred in denying section 203 waiting time penalties. No such claim was made during oral argument on May 26, 1983, immediately following which we took the appeal under submission. It was only after the case was under submission that a majority of this court issued its order vacating submission and directing counsel to file additional briefs upon the issue, among others, of whether under section 203 penalty wages are cut off by the filing of a complaint with the Labor Commissioner. Thus the “postulation” of plaintiff, to which the majority refers, is a responsive brief to an issue raised by this court on its own motion and directed toward its own inquiry as to whether the trial court’s decision on that issue should be reversed.
Cases are legion in holding that appellate courts “will notice only those assignments pointed out in the brief of an appellant, all others are deemed to have been waived or abandoned.” (Title G. & T. Co. v. Fraternal Finance Co. (1934) 220 Cal. 362, 363 [30 P.2d 515].) “Appellate courts cannot be expected to assume the task of searching the record for the purpose of discovering errors not pointed out by counsel. It is the duty of counsel by argument and the citation of authorities to show that the claimed error exists.” (Estate of Randall (1924) 194 Cal. 725, 728 [230 P. 445]; see, also, the numerous cases collected in 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 425, p. 4392.) Mr. Witkin points out that appellate courts depart from this rule only in exceptional instances and only for “good reason.” (See Witkin, op. cit. supra, § 426, p. 4393.)
No “good reason” or any reason is suggested in the majority opinion for departing from the prevailing rule in the present case, and I can conceive of none. We uniformly apply the prevailing rule to other litigants and to depart from it in the present case, I submit, is to create the grave danger that we will be perceived by litigants as acting arbitrarily and capriciously or in favoring one litigant over others.
*Supp. 20 But even if we are to proceed to examine this issue on our own initiative, it seems to me that to reverse the judgment to benefit a nonappealing respondent is to exceed our appellate powers.
“The failure to appeal indicates acquiescence in the judgment. (Citation.) As stated in American Enterprise[4] ‘there devolves upon a litigant the duty to appeal from a judgment with which he has serious dissatisfaction. ’ (P. 221.) It is the general rule that a respondent in whose favor a judgment is rendered is interested only in maintaining the judgment, and he cannot on an appeal of the opposite party ask a court of review to consider any errors against him, even though the errors of which the respondent complains were objected to by him in the trial court and are argued or discussed in respondent’s brief. (Citation.) The exception to this rule is that provided by the 1957 amendment to Code of Civil Procedure section 956[5] which provides that the respondent, or party in whose favor the judgment was given, may, without appealing from the judgment, request the court to and it may review the matters reviewable on appeal from the judgment for the purpose of determining whether or not the appellant was prejudiced by the error or errors upon which he relies for reversal or modification of the judgment from which the appeal is taken.” (Auer v. Frank (1964) 227 Cal.App.2d 396, 404-405 [38 Cal.Rptr. 684, 8 A.L.R.3d 1108]; italics in the original.)
Section 906 of the Code of Civil Procedure, dealing with the powers of a reviewing court, provides in significant part: “The respondent, or party in whose favor the judgment was given, may, without appealing from such judgment, request the reviewing court to and it may review any of the foregoing matters for the purpose of determining whether or not the appellant was prejudiced by the error or errors upon which he relies for reversal or modification of the judgment from which the appeal is taken. The provisions of this section do not authorize the reviewing court to review any decision or order from which an appeal might have been taken. ” (Italics added; see also, Central Manufacturing District, Inc. v. Board of Supervisors (1960) 176 Cal.App.2d 850, 857 [1 Cal.Rptr. 733] [“This new matter seems to be a codification of the existing rule established by court decisions; they recognize that a respondent may assert a legal theory which, if found to be sound, should result in affirmance notwithstanding appellant’s contentions.”]; Kasel v. Remington Arms Co. (1972) 24 Cal.App.3d 711, 728-729 [101 Cal.Rptr. 314].)
Kasel v. Remington Arms Co., supra, 24 Cal.App.3d 711 is an example of the limited application of this exception. There, a manufacturer of am *Supp. 21 munition was sued in California because of the explosion of an allegedly defective shotgun shell in Mexico from which plaintiff sustained injuries. In a pretrial determination, the trial judge ruled that California, rather than Mexican, law would apply, it being conceded that plaintiff would have no basis for recovery under Mexican law. A jury trial resulted in a verdict for defendant, and plaintiff appealed claiming instructional error as to the law of strict liability. Defendant, who did not appeal, claimed error in the choice of law. The Court of Appeal ruled:
“Plaintiff asserts that because Remington failed to appeal, the adjudication with respect to choice of law is final. However, under the authority of Code of Civil Procedure section 906, we may review the trial court’s decision that California law should apply in order to determine whether plaintiff was or was not prejudiced by the trial court’s questioned instruction. (Mott v. Horstmann, 36 Cal.2d 388, 393 [224 P.2d 11]; Auer v. Frank, 227 Cal.App.2d 396, 405 [38 Cal.Rptr. 684, 8 A.L.R.3d 1108]; Central Manufacturing District, Inc. v. Board of Supervisors, 176 Cal.App.2d 850, 857 [1 Cal.Rptr. 733].) Plaintiff, of course, would not be prejudiced by the erroneous instruction requiring a finding of an agency relationship between Remington and CDM before strict liability could be applied if we should determine that the court improperly applied California law. This is so because practically it was agreed by all concerned that Mexico does not recognize strict liability in tort, let alone the enterprisal stream-of-commerce rule, to which basis for liability plaintiff had limited his claim.
“Accordingly, we will consider Remington’s alternate argument that the trial court erred in its decision that California law applied to the determination of issues raised in this case. The pertinent facts upon which the trial court made this ruling have already been set forth. We need only again advert to the fact that the trial court received the expert opinion of a Mexican attorney that Mexican law does not compensate for pain and suffering and that it was in effect stipulated that Mexican law gives no recovery under a products liability theory. We also remind that as we were bound by the fact finder’s resolution of material conflicts in the liability phase of this case, we are obligated to view the circumstances in the light most favorable to the trial court’s ruling in the choice of law phase of this case.” (Kasel, supra, at pp. 728-729; fn. omitted.)
On the appeal before us, appellant raised three issues: (1) the propriety of assessing against plaintiff defendant’s costs and attorney’s fees pursuant to section 98.2, subdivision (b); (2) whether upon plaintiff’s timely appeal from the Labor Commissioner’s award it was proper to impose against plaintiff, pursuant to section 206, subdivision (b), treble damages for nonpayment of the award; and (3) if under the employment contract defendant *Supp. 22 was entitled to both severance pay and vacation pay. It is impossible to see, and the majority opinion does not suggest, how possible error in failing to award waiting time penalties could make nonprejudicial any of these assertions of error.[6]
But even if some theory could be found which would permit a review of this issue as reflecting upon the possible prejudicial effect of an error claimed by appellant, we have no power to take the additional step of reversing a part of a judgment from which a respondent could have, but did not, appeal. Code of Civil Procedure section 906 is explicit in providing: “The provisions of this section do not authorize the reviewing court to review any decision or order from which an appeal might have been taken. ” Although it might be tempting to replace an award of treble damages under section 206, subdivision (b), which the employee legally cannot recover, with a substitute award of waiting time penalties under section 203, this cannot be accomplished without reversing the part of the judgment which denies defendant that award, which I submit we have no power to do.
If we should undertake such a review, however, the judgment on this point should still be affirmed.
(b) Interpretation of “Action” in Section 203
Section 203 provides that an employer who “willfully fails to pay . . . any wages of an employee who is discharged or quits” is obligated to continue the payment of wages “until an action therefor is commenced . . . .” It is without question in the present case that Jackson was discharged on May 8, 1981, and that she filed a complaint[7] with the Labor Commissioner on May 11, 1981, seeking severance pay, vacation pay, and waiting time penalties at the rate of $77 per day.[8]
*Supp. 23 The majority holds that waiting time penalties continued after the commencement of the action before the Labor Commissioner. It concludes that in using the phrase, “an action therefor is commenced,” the Legislature intended to restrict the word “action” to a “civil action” in a court of law as contemplated by the Code of Civil Procedure. To reach this conclusion, it is necessary to disregard the Legislature’s expressed intentions in the enactment of the procedure governing employees’ actions established in the enactment of section 98 et seq.
Prior to the enactment of section 98 et seq., in 1976, there was no procedure for the Labor Commissioner to take administrative action upon an employee’s claim for wages which would have any binding effect upon the parties. He could only investigate the claim, which investigation might include an informal hearing involving the employee and employer, and if convinced it was meritorious take an assignment of it (former § 96) and prosecute it on behalf of the employee in a civil action. (Former § 98.) One of the purposes of the legislative amendments in 1976 (Stats. 1976, ch. 1190) was to vest in the Labor Commissioner the responsibility and authority to hear “actions” for wages and other compensation.
The Legislative Counsel’s summary digest of the bill resulting in chapter 1190 recites in pertinent part: “The existing law permits the Division of Labor Law Enforcement [now the Labor Commissioner] to prosecute specified actions for the collection of wages, penalties, and demands of persons financially unable to employ counsel, permits the division to maintain actions in the courts of other states for the collection of claims for wages, judgments and other demands pursuant to reciprocal agreements or the laws of any other state, and permits the division, upon request of such other states, to maintain actions in the courts of this state upon assigned claims for wages, judgments and demands arising in that state. This bill would require the Labor Commissioner to maintain such actions.”
Section 98, subdivision (a), as enacted, provides in significant part: “The Labor Commissioner shall have the authority to investigate employee complaints. The Labor Commissioner may provide for a hearing in any action to recover wages, penalties, and other demands for compensation properly before the division or the Labor Commissioner . . ., and shall determine all matters arising under his or her jurisdiction.” (Italics added.)
Subdivision (a) and ensuing subdivisions set forth the procedure to be followed in conducting hearings. Section 98.1 provides for an “order, decision or award” (subd. (a)) and that all awards shall accrue interest “at the same rate as judgments in civil actions, except that no interest shall *Supp. 24 accrue on those sums during the course of a court appeal. ” (Subd. (b); italics added.)
In 1980, the Legislature, by enactment of Senate Bill 1397, established present section 98.2, subdivision (b). (Stats. 1980, ch. 453, § 1, p. 960.) The Legislative Counsel’s Digest of the bill describes the status of existing law as established by the 1976 enactments reviewed above: “Existing law provides the Labor Commissioner with the authority to investigate employee complaints, to provide for a hearing in any action to recover wages, penalties and other demands for compensation, and to determine all matters arising under his or her jurisdiction.” (Italics added.)
These proceedings and enactments make abundantly clear that the Legislature contemplated an “action” before the Labor Commissioner. Thus, section 98, subdivision (a) refers to “any action . . . properly before the . . . Labor Commissioner . . . arising under his or her jurisdiction.” The Legislature could not have contemplated a civil action in a court but only an action before the commissioner. Obviously, if the action were not before the commissioner, he or she could not provide for a hearing and could have no “jurisdiction” of it.
Although the Legislature could have specified that the word “action” have only the meaning given to that term in the Code of Civil Procedure, it was not bound to restrict it to that meaning. In enacting these sections the Legislature was concerned with the Labor Code, which in many instances uses the word “action” to refer to proceedings before an administrative agency established pursuant to that code. (E.g., § 119 [the attorney appointed by the administrative director of the Division of Industrial Accidents must represent, and appear on behalf of, the state “in all actions and proceedings arising under any provision of this code administered by the division. . . .”]; § 5710 [in hearings before the Workers’ Compensation Appeals Board, the board, a referee, “or any party to the action or proceeding, may” cause the taking of a deposition of a witness]; § 5953 [“the appeals board and each party to the action or proceeding before the appeals board shall have the right to appear in the review proceeding.”] (Italics in all quotations added.)) It is apparent that the Legislature in dealing with many sections of the Labor Code has chosen to use the word “action” to describe an administrative proceeding, and that it did so with the different meaning of that term as applied to a civil action in a court of law in mind. In section 98.1, subdivision (c), it demonstrates its awareness of the meaning to be given to “civil action,” as that term is defined in the Code of Civil Procedure, and that an action before the Labor Commissioner is different from an action in court, by providing for interest on awards “at the same rate as *Supp. 25 judgments in civil actions” and in suspending the accrual of interest on awards “during the course of a court appeal.” (Italics added.)
I submit that it is plainly evident that the Legislature, in providing for the termination of waiting time penalties, was referring to the “action” which it had established by section 98.
(c) Sufficiency of the Record to Establish Wilfulness
Even if the waiting time penalties under section 203 are terminated only by a court action, and not by an action under section 98, still no waiting time penalties accrue at all unless failure to pay is willful. In defining the word “willful” the majority opinion refers to the older case of Davis v. Morris (1940) 37 Cal.App.2d 269 [99 P.2d 345]. More recently, Davis and other decisions in this field were comprehensively reviewed by the Court of Appeal in Barnhill v. Robert Saunders &. Co. (1981) 125 Cal.App.3d 1, at pp. 7-8 [177 Cal.Rptr. 803]:
“Appellant contends that penalties should not have been imposed, because it had a good faith defense to respondent’s wage claim.
“The purpose of section 203 is to compel the prompt payment of earned wages; the section is to be given a reasonable but strict construction. (Oppenheimer v. Sunkist Growers (1957) 153 Cal.App.2d Supp. 897, 898-899 [315 P.2d 116].) In Manford v. Singh (1919) 40 Cal.App. 700, 702-703 [181 P. 844], the court said with respect to a predecessor of section 203: ‘ [T]he statute should have reasonable construction. Its design is to protect the employee and to promote the welfare of the community. . . . But it is to be observed that the most formidable objection to the statute derives its principal force from the supposed hardships of a hypothetical case wherein the employer is without fault or the employee is guilty of culpable conduct. The statute is not subject to such reproach. It contemplates that the penalty shall be enforced against an employer who is at fault. It must be shown that he owes the debt and refuses to pay it. He is not denied any legal defense to the validity of the claim. ’
“However, to be at fault within the meaning of the statute, the employer’s refusal to pay need not be based on a deliberate evil purpose to defraud workmen of wages which the employer knows to be due. As used in section 203, ‘willful’ merely means that the employer intentionally failed or refused to perform an act which was required to be done. (Davis v. Morris (1940) 37 Cal.App.2d 269, 274 [99 P.2d 345].) (Italics added.)
“In Davis, judgment was rendered against the members of a mining partnership for the mine superintendent’s unpaid wages, plus a section 203 *Supp. 26 penalty. On appeal, the partners argued that their failure to pay was not wilful since, in good faith, they believed the superintendent was a partner who contributed his services rather than an employee. Therefore, they reasoned, the penalty was not warranted.
“The court noted that the evidence as to the superintendent’s employment status was in conflict, but found substantial evidence that the superintendent was not a partner, and that the partners were not in good faith in claiming that he was a partner. (Davis, supra, 37 Cal.App.2d at p. 274.) In other words, the dispute before the trial court was one of fact, and the evidence supported that court’s determination that the employers had no factual basis for their refusal to pay.
“In contrast, in this case the essential facts are undisputed. Respondent was owed wages by appellant, and she owed appellant a debt. The question before the trial court was one of law: did appellant have a right to set off the debt against the wages? There was no contention that appellant did not entertain a good faith belief that it was entitled to such a setoff. Although we have concluded that the trial court correctly determined that appellant had no such right, at the time the state of the law in that regard was not clear. In Oppenheimer v. Sunkist Growers, supra, 153 Cal.App.2d Supp. at page 899, in a discussion of Labor Code sections 201, 202, and 203, the court stated: ‘ “Statutes of the character under discussion are intended to compel the employer to pay promptly the regularly earned wages of an employee who was either discharged or who quit of his own accord; they must be given a reasonable, although necessarily strict, construction, and their literal enforcement, it has been held, may yield to strong equitable defenses. ” (56 C.J.S. 761.)’ (Italics added.) The doctrine of setoff is an equitable principle. (See Kruger, supra, 11 Cal.3d at p. 360 [113 Cal.Rptr. 449, 521 P.2d 441, 65 A.L.R.3d 1266].) Moreover, several Courts of Appeal had expressed the view that setoffs against employees’ wages were proper, and the Kruger court itself seemed to suggest that an employer had at least some right of setoff. (See Kruger, fn. discussed ante, at p. 5.) We conclude that given that uncertainty, appellant should not be penalized for believing that setoff was proper and payment of wages not required.” (Text of fn. 3 omitted.)
Emerging from this quotation are two important principles. First, there must be an intentional failure on the part of the employer to make the required payment in connection with which good faith is a defense.[9] Secondly, the issue of good faith is a question of fact.
*Supp. 27 The majority opinion states: “We find in the case before us that the trial court determined that plaintiff willfully failed to pay to defendant the wages (severance pay in the sum of $1,631) due defendant at the time she was discharged on May 8, 1981.” (Ante, at pp. Supp. 8, 9) Where this determination appears in the record is not indicated.
We have before us only the judgment denying waiting time penalties under section 203. The trial judge made no findings of fact, gave no statement of decision, and included no evidence of a wilful failure to pay in the settled statement. Indeed, it is apparently the lack of any evidence touching upon the issue of wilfulness which prompted the majority in their order vacating submission to direct the trial judge “. . . to augment the settled statement dated October 19, 1982, and filed herein January 18, 1983, by providing this court with a written summary of the testimony given before him as trial judge in the above-captioned matter.” The trial judge responded on August 31, 1983, by a statement indicating that, although he took notes of the testimony at the trial, he had destroyed those maintained by him and the court clerk could not locate any, and “[a] review of a copy of the Settled Statement of Fact on Appeal, reveals no reference to specific testimonial evidence from which to refresh the court’s memory.” As a consequence, we are left with no evidence before us which would show that failure to pay was wilful.[10]
Kasel v. Remington Arms Co., supra, reminds us that when a respondent claims that the trial court committed error, he is essentially in the same position as an appellant, and on appeal, as we are “bound by the fact finder’s resolution of material conflicts in the liability phase of this case, we are obligated to view the circumstances in the light most favorable to the trial court’s ruling . . . .” (24 Cal.App.3d at p. 729.) In the state of the record before us, in which we have no findings of fact, statement of decision, memorandum opinion, or indication in the settled statement that the trial judge found that any failure to pay was wilful, and in which we lack any evidence tending toward such a showing, I submit it is gross error for this court to find as a matter of law, as the majority essentially does, that *Supp. 28 failure to pay was wilful and reverse the judgment based upon such a finding.
3
Section 98.2, subdivision (a) allows a party to “seek review by filing an appeal to the justice, municipal, or superior court, in accordance with the appropriate rules of jurisdiction, where the same shall be heard de novo.” Subdivision (b) provides: “(b) If the party seeking review by filing an appeal to the justice, municipal, or superior court is unsuccessful in such appeal, the court shall determine the costs and reasonable attorney’s fees incurred by the other parties to the appeal, and assess such amount as a cost upon the party filing the appeal.”
The award made against Triad by the Labor Commissioner was $4,585. The judgment on appeal[11] rendered by the majority totals $3,297, a net improvement by Triad in its position of $1,288.[12] In affirming the award of attorney’s fees, however, the majority construes the phrase, “unsuccessful in such appeal,” to mean the converse of “prevailing party,” which it defines as “the party in whose favor final judgment is rendered.” Thus, because Jackson ultimately recovered a judgment in some amount after the appeal, even though it was for $1,288 less than the award she had before the appeal was taken, she was the “prevailing party” on the appeal, and Triad, which succeeded by the appeal in reducing its obligation by the same amount, was “unsuccessful in the appeal.” The majority premises this remarkable conclusion upon this reasoning:
1. The statute (§ 98.2, subd. (b)) places the risk of liability for attorneys’ fees and costs upon the party seeking review whom, in light of the legislative policy “of intolerance of delay by employers in withholding just wages due a discharged or terminated employee,” should be the employer;
2. The issue of an employer’s success on the appeal cannot be decided by comparing the Labor Commissioner’s award with the court’s award, because the proceeding before the court is a trial de novo in which no effect is given to the findings of, or the evidence before, the commissioner;
*Supp. 29 3. No effect can be given the rules which normally determine the identity of the prevailing party on an appeal, because the Labor Commissioner is not a judicial officer and to allow comparison of his award with the court’s award would violate “the constitutional provision defining the appellate jurisdiction of the courts of this state;” and
4. “Unsuccessful in such appeal” is to be determined in the same manner as awards of attorneys’ fees and costs pursuant to section 1717 of the Civil Code.
I find none of the assigned reasons convincing.
Nothing in the statute or the legislative history suggests that the Legislature in enacting section 98.2, subdivision (b), intended that it operate unilaterally against employers or that it was designed to serve the purpose of preventing the withholding of “just wages due a discharged or terminated employee.”[13] To the contrary, the apparent purpose of it is to give force and effect to the Labor Commissioner’s award by discouraging either party from appealing from the award on other than meritorious grounds.
Subdivision (b) of section 98.2 was enacted in 1980.[14] Its purpose, as stated in the Legislative Counsel’s Summary Digest, is: “SB 1397, Dills. Payment of wages.
“Existing law provides the Labor Commissioner with the authority to investigate employee complaints, to provide for a hearing in any action to recover wages, penalties, and other demands for compensation, and to determine all matters arising under his or her jurisdiction. Within 15 days after the hearing is concluded, the Labor Commissioner is required to file the order, decision, or award, and serve notice on the parties. Within 10 days after service of notice of an order, decision, or award, the parties may seek review by filing an appeal to the municipal or superior court.
*Supp. 30 “This bill would, in addition, permit such appeal to the justice court, and would provide that if the party seeking review by filing an appeal to the justice, municipal, or superior court is unsuccessful in such appeal, the court shall determine the costs and reasonable attorneys’ fees incurred by the other parties to the appeal, and assess such amount as a cost upon the party filing the appeal.”
Section 98.2, subdivision (a), contemplates that any party may appeal a decision of the Labor Commissioner. It provides that “the parties may seek review by filing an appeal to . . .” the appropriate court, “where the same shall be heard de novo.” Subdivision (b) states that “[i]f the party seeking review by filing an appeal ... is unsuccessful in such appeal, the court shall determine costs and reasonable attorneys’ fees incurred by the other parties to the appeal, and assess such amount as a cost upon the party filing the appeal. ” (Italics added.)
If the Legislature had intended to impose the sanction of payment of the opposing party’s attorneys’ fees and costs only against the employer, it could quite easily have said so. But it evidenced recognition that either the employer or the employee might appeal from the Labor Commissioner’s decision and the intention to impose the sanction of payment of the opposing party’s attorneys’ fees and costs if unsuccessful on the appeal whether the appellant be the employer or employee.
The majority’s interpretation of subdivision (b) would not accomplish this purpose. Under that interpretation, an award of such sanctions against the employer is made to depend entirely upon whether in the trial de novo appeal the employee recovers any amount, no matter how small and no matter how much less than the award of the Labor Commissioner. In circumstances similar to the present case, in which the employer has appealed an admittedly unjustly high award, he is penalized for exercising his appeal rights by being compelled to pay the costs and attorneys’ fees of the employee whose recovery has been properly reduced. In the converse circumstance, of an employee’s appeal, an equally unjust result would follow. An employee dissatisfied with an award might appeal and, after a trial de novo, recover no greater, or even a far lesser sum, but under the majority’s reasoning he would not be “unsuccessful in such appeal.” The result of this reasoning is to penalize employers for taking meritorious appeals and to reward employees for taking unmeritorious ones.
As support for their interpretation of subdivision (b), that an award of costs and attorneys’ fees and costs depends solely upon whether in the trial de novo the employee recovers any amount, no matter how small, the majority cites decisions dealing with awards of attorneys’ fees pursuant to Civil *Supp. 31 Code section 1717.[15] It overlooks the difference in wording between that section and section 98.2.
Section 1717 provides: “(a) In any action on a contract, where the contract specifically provides that attorney’s fees and costs, which are incurred to enforce the provisions of that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the prevailing party, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney’s fees in addition to costs and necessary disbursements.” (Italics added.)
Section 1717 is thus concerned with whether a party suing upon such a contract recovers upon it in the action.[16] An action is deemed to include all proceedings necessary to an ultimate determination, including an appeal if necessary, and no determination can be made as to whether plaintiff has prevailed, and thus is entitled to costs and attorney’s fees, until a final adjudication. But subdivision (b) of section 98.2 does not provide for costs and attorney’s fees to the party prevailing in the action, and no provision of the Labor Code does. It provides for them in the limited circumstance of a party appealing an award of the Labor Commissioner to a court of law, and then they are assessed against a party only if he “is unsuccessful in such appeal.”
Over the years definitive rules have developed for determining who is a “prevailing” party on an appeal. These principles have been embodied in rule 26 of California Rules of Court in significant part as follows: “(a) Except as hereinafter provided, the prevailing party shall be entitled to his costs on appeal as an incident to the judgment on appeal. In the case of a general and unqualified affirmance of the judgment, or the dismissal of an appeal, the respondent shall be deemed the prevailing party; in the case of a reversal, in whole or in part, or of a modification of the judgment, the *Supp. 32 appellant shall be deemed the prevailing party.” (See also, 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 581, p. 4513.) Certainly in the usual sense of the term as applied to appeals, Triad was the prevailing and clearly not an unsuccessful party in its appeal to the municipal court and this court. It has succeeded in having an award against it reduced by more than $1,200.
The majority asserts, however, that the usual meaning of “prevailing party” to an appeal cannot be given to section 98.2 because to do so would be to treat the award of the Labor Commissioner as a “judicial” act and unconstitutionally vest him or her with “judicial” powers, and for the further reason of a theoretical impossibility in comparing the ultimate judgment of the court with the award of the commissioner because the trial de novo “nullifies” the award.
I find no constitutional impediment. It must be kept in mind that the award of attorneys’ fees and costs is made by the court, which is charged only with the responsibility of comparing the judgment it renders with a prior event—the Labor Commissioner’s award. In several instances, the court in determining whether to award costs or attorneys’ fees must compare the amount of the judgment with some prior nonjudicial event. (E.g., Code Civ. Proc., § 998 [party rejecting offer to compromise must pay opponent’s costs if no more favorable judgment]; Code Civ. Proc., § 1025 [no right to costs if full amount of obligation tendered and deposited in court]; Code Civ. Proc., § 1141.21 [party demanding trial de novo after arbitration award must pay costs if he obtains no more favorable a judgment]; Civ. Code, § 1717 [defendant who tenders full amount of obligation is “prevailing party” for purpose of award of costs and attorneys’ fees].) In none of these instances is it necessary that the preceding event be “judicial” to bind the court in its ruling as to the allowance or disallowance of costs or attorneys’ fees. Similarly, in the present case the issue is whether in the proceedings upon the trial de novo Triad attained a result more favorable to it than the award of the Labor Commissioner, whether the award be deemed “judicial” or “nonjudicial” and whether the proceeding in court be deemed an appeal in the classic sense, an administrative review or a completely de novo trial.
The majority points out that upon the trial de novo, the trial court is not bound by the findings of the commissioner and the evidence before him but it conducts a complete new trial, and its decision is binding on the parties as though no determination by the Labor Commissioner had been made. Although it is correct that the commissioner’s determination is nullified by the trial de novo, the fact that the commissioner has made a determination *Supp. 33 does not simply vanish. To the contrary, the Legislature has made clear that it continues to exist for some purposes of comparison. Thus in section 98.4 it is provided: “The Labor Commissioner may, upon the request of a claimant financially unable to afford counsel, represent such claimant in the de novo proceedings provided for in section 98.2. In the event that such claimant is attempting to uphold the amount awarded by the Labor Commissioner and is not objecting to any part of the Labor Commissioner’s final order, the Labor Commissioner shall represent the claimant.” One would indeed wonder how a determination could be made as to whether the claimant “is attempting to uphold the amount awarded” and is “not objecting to any part of the Labor Commissioner’s final order,” if such order has completely disappeared.
In my opinion, section 98.2, subdivision (b) has the same purpose, and should be given the same effect, as Code of Civil Procedure section 1141.21, dealing with the consequences to a party to a mandatory arbitration proceeding who, being dissatisfied with the award, elects to proceed by a trial de novo. That section provides in pertinent part: “(a) If the judgment upon the trial de novo is not more favorable in either the amount of damages awarded or the type of relief granted for the party electing the trial de novo than the arbitration award, the court shall order that party to pay the following nonrefimdable costs and fees, ...” Applying similar reasoning, we would strike the award of costs and attorneys’ fees.[17]

Conclusion

I would modify the judgment by striking from it the award of treble damages and the assessment of costs and attorneys’ fees. In my opinion, we have no jurisdiction to reverse the part of the judgment denying waiting *Supp. 34 time penalties. I would affirm the judgment as modified with costs to the appellant.[18]

All section references, unless otherwise expressly indicated, are to the Labor Code.

On the appeal, neither party contends that this figure for 30 days severance pay under the contract, is incorrect. Triad contends, however, the award of $1,631 as compensation owing to Jackson is erroneous, claiming that it should have been reduced more because of overdrawn vacation.

It is conceded that the amount awarded is arithmetically incorrect, but it is obviously erroneous in another respect. Subdivision (b) does not provide for a penalty of treble the amount of compensation awarded but “treble the amount of any damages accruing to the employee as a direct and foreseeable consequence of such failure to pay.’’ It is thus concerned with consequential damages to the employee, no evidence of which is shown by the record before us.

American Enterprise, Inc. v. Van Winkle (1952) 39 Cal.2d 210 [246 P.2d 935],

Section 956 was renumbered as 906 in 1968. (Stats. 1968, ch. 385, § 2, p. 814.)

No such claim has ever been made by respondent.

The majority characterizes what was filed with the commissioner as a “claim.” A copy of the document is included in the record on appeal. It recites that it is “Before the Labor Commissioner of the State of California,” it is entitled “Complaint,” and bears a docket number of 10024. Section 98 authorizes the Labor Commissioner, in some instances, “to accept and determine claims” but in other instances to take action upon the “filing of a complaint . . . .” Here, it is apparent that a complaint was filed as the institution of an action before the commissioner, which in fact did result in an award.

The figure of $77 per day, which Jackson claimed and which the Labor Commissioner accepted as the basis for his award, remains a mystery. Jackson’s salary of $20,000 per year, computed on a daily basis, amounts to $54.86 per day. Computed on a monthly basis, it amounts to $1,666 per month, the figure accepted by the trial judge. Jackson does not, on the appeal, attempt to justify the $77 per day figure but accepts the figure of $1,666 per month as correct. Triad does not contest this figure in computing severance pay but urges that the ultimate compensation figure of $1,631 is incorrect because the trial court failed to deduct from the severance pay the total amount of overdrawn vacation pay. In my opinion, the evidence in the settled statement is insufficient to establish, as a matter of law, Triad’s contention.

As Barnhill, supra, points out: “We note that in a number of jurisdictions, an honest dispute between the parties, or uncertainty on the part of the employer, as to the amount of wages due, has been held to constitute a valid defense to an action for statutory penalties for nonpayment. (Annot. (1963) 90 A.L.R. 2d 606, 632.)’’ (125 Cal.App.3d at p. 7, fn. 3.)

Indeed, the only evidence upon that issue before us at all is that the employer, although conceding that Jackson was entitled to severance pay of $1,666, claimed that the amount should be reduced because of her having taken vacation to which she was not entitled. In every forum—the Labor Commissioner, the trial court, and in this court—that claim has been sustained in some amount! To hold as a matter of law that there was not a good faith dispute as to the amount owing, when this court agrees that there was a legitimate claim of offset, in my opinion, is totally without support. Moreover, under section 203 no benefit is available to the employee who absents himself or refuses a full tender of payment. We do not know if either of these things occurred because we simply have no evidence of what occurred after Jackson was terminated. Thus, the only evidence before us supports the trial court’s implied finding that the employer’s refusal was not wilful.

The hearing in the trial court and the current appeal are part of the same proceeding, within the meaning of section 98.2 (Gipe v. Superior Court (1981) 124 Cal.App.3d 617, 625-626 [177 Cal.Rptr. 590].)

If, as I submit is correct, we lack jurisdiction to reverse the nonappealed denial of waiting time penalties under section 203, plaintiff’s improvement in position is even more marked, since it would have succeeded in reducing its total obligation from $4,585 to $1,631, a decrease of $2,954.

As pointed out above, Jackson’s complaint sought severance pay wages of $2,130 and vacation pay of $346.50, each based on a rate of $77 per day, and the Labor Commissioner gave his award of severance pay and waiting time penalties at that rate, a figure that neither Jackson in her brief on appeal nor the Labor Commissioner in his invited amicus curiae brief now attempts to justify. It is precisely because Jackson made, and was granted, an unjust claim for wages that an appeal became necessary.

The procedures for this action before the Labor Commissioner and subsequent review were first established in 1976 with the enactment of chapter 1190 of the statutes of that year. (Assem. Bill No. 1522, Berman.) Subdivision (b) of section 98.2 was enacted in 1980 as part of amendatory legislation which, in addition to creating subdivision (b), renumbered the remaining subdivisions of section 98.2 and made corrections in their wording to conform to the new numbering. (Stats. 1980, ch. 453, § 1, p. 960; (Sen. Bill No. 1397, Dills).)

The majority cites Huckell v. Matranga (1979) 99 Cal.App.3d 471, 482 [160 Cal.Rptr. 177], and Hughes Tool Co. v. Max Hinrichs Seed Co. (1980) 112 Cal.App.3d 194, 204 [169 Cal.Rptr. 160], both dealing with awards under that section. It also cites 4 Witkin, California Procedure (2d ed. 1971) Judgment, section 122, dealing with the same subject.

But even that rule is not unvarying. Subdivision (2) of Civil Code section 1717 permits the defendant to allege that he has tendered to plaintiff “the full amount to which he or she is entitled” and if that allegation is found to be true, “the defendant is deemed to be a prevailing party within the meaning of this section. ” Implicit in that provision is the necessity of the court comparing the amount tendered with the amount of the judgment. If the amount of the judgment is equal to or less than the amount of the tender, defendant is deemed to be “a prevailing party.” Only if the plaintiff recovers more than the amount of the tender is he or she “a prevailing party” for the purpose of awarding costs and attorneys’ fees.

A situation comparable to the present case was presented in Weber v. Kessler (1981) 126 Cal.App.3d 1033 [179 Cal.Rptr. 299]. There, after a judicial arbitration award pursuant to Code of Civil Procedure section 1141.11, defendant requested a trial de novo pursuant to section 1141.20. After a trial, the trial judge adopted the arbitrator’s memorandum decision as his own findings of fact and conclusions of law. On appeal, this was held to be error. The Court of Appeal pointed out that in order to assure the party requesting a trial de novo that “he will be able to start with a ‘clean slate’,” and to avoid the judge’s being unduly influenced by the arbitrator’s findings, California Rules of Court, rule 1616(c) requires that the case be tried “as though no arbitration proceeding had occurred,” and no reference may be made at trial to the arbitration award or even to the fact that an arbitration proceeding took place. Nevertheless, pursuant to section 1141.21, it is necessary to examine the arbitration award in order to determine “if the judgment for the party electing the trial de novo is not more favorable” for the purpose of imposing costs pursuant to that section. The dilemma was resolved by restricting such examination to a time after the trial judge has made his decision. (126 Cal.App.3d at p. 1036.)

Rule 135(a), California Rules of Court provides in part: “Except as hereinafter provided, the prevailing party shall be entitled to his costs on appeal from a municipal court as an incident to the judgment on appeal. In the case of ... a reversal, in whole or in part, or of a modification of the judgment, the appellant shall be deemed the prevailing party . . . .” In the present case, Triad is clearly the prevailing party on this appeal, and no reason is suggested by the majority why it should be denied its costs on appeal.